359 S.E.2d 136

**STATE of West Virginia**

v.

· **Nancy ORTH.**

**No. 17167.**

Supreme Court of Appeals of West Virginia.

June 18, 1987.

---

Mary Beth Kershner, Asst. Atty. Gen., for appellant.

Thomas C. Schultz, Wheeling, for appellee.

McGRAW, Chief Justice:

This is an appeal by Nancy Orth from her conviction in the Circuit Court of Ohio County on two counts of obtaining money by means of a worthless check in violation of West Virginia Code § 61-3-39 (1984 Replacement Vol.). Because we find that the recipient of the checks in question had reason to believe the appellant did not have sufficient funds on deposit, the statute is inapplicable, and we reverse.

Following the death of her husband, the appellant began to gamble. She regularly traveled from her Pittsburgh, Pennsylvania home to Wheeling Downs to bet on the dog races. The general manager of the racetrack testified that the appellant became a track veteran and gambled there on almost a daily basis.

Wheeling Downs cashed patron's checks, utilizing an established procedure which included the availability of a mechanism for verifying with the customer's bank that sufficient funds were on deposit. The appellant frequently wrote checks at the racetrack in order to have cash for placing bets. Between April 20, 1982 and June 21, 1982 the appellant cashed eleven checks totaling $7350 at Wheeling Downs. Six of those checks, totaling $4800, were returned by the bank for insufficient funds while five checks totaling $2550 cleared the bank. The appellant paid the $4800 to Wheeling Downs, and the general manager decided to continue cashing the appellant's checks in order to have her continue betting at the track. No limits were placed on the amount of checks the appellant could cash and no one verified the adequacy of the appellant's bank balance before cashing her checks.

Beginning one month later, between July 26, 1982 and August 9, 1982, the appellant cashed seven checks at the track totaling $5600, all of which were returned by the bank. When the appellant did not make these checks good and stopped frequenting the track, the racetrack obtained warrants for her arrest in December 1982. In August 1983 the appellant returned to the track, where she was arrested.

The appellant signed a waiver of the preliminary hearing after an accommodation was negotiated by the assistant prosecuting attorney for Ohio County, providing for restitution to Wheeling Downs. The agreement was not reduced to writing, but apparently involved the appellant's promise to repay Wheeling Downs $150 a month in return for the State's agreement not to seek an indictment so long as payments were made. The appellant made several payments totaling $750 directly to Wheeling Downs. Her last payment was made in April 1984, after which she failed to send any money at all. Wheeling Downs then sought and obtained presentment of the charges to the grand jury, and a seven count indictment was returned on September 11, 1984.

The appellant was tried and found guilty on all seven counts. The circuit court granted the appellant's post-trial motion for a judgment of acquittal on five of the seven counts, finding that Wheeling Downs had notice that the appellant did not have sufficient funds on deposit to cover the checks involved. The instant appeal is from the conviction on the remaining two counts.

I.

There was no criminal liability at common law for the specific act of making a worthless check, *State v. Stout*, 142 W.Va. 182, 185, 95 S.E.2d 639, 641 (1956), but the

Legislature made it a crime in 1911, Chapter 76, Acts of the Legislature, Regular Session, 1911. The current statute is set out in West Virginia Code § 61–3–39, making it unlawful to obtain money or other things of value by means of a worthless check. By its own terms, however, that statute does not apply when the person receiving the check "knows ... or has reason to believe that the drawer did not have on deposit or to his credit with the drawee sufficient funds to insure payment." W.Va.Code § 61–3–39.

■ Fraud is the gravamen of the offense proscribed by section thirty-nine. *See State v. McGinnis,* 116 W.Va. 473, 181 S.E. 820 (1935). When the payee or holder accepting a check knows there are not sufficient funds on deposit, he cannot be the victim of fraud and, thus, no offense is committed. Under similar statutory provisions, a person who discloses to the payee that there are not currently adequate funds on deposit to cover a check is not guilty of passing a worthless check, because the payee had actual notice of the insufficiency. *People v. Poyet,* 6 Cal.3d 530, 99 Cal. Rptr. 758, 492 P.2d 1150 (1972); *Rigaud v. State,* 404 So.2d 791 (Fla.Dist.Ct.App.1981); *People v. Cundiff,* 16 Ill.App.3d 267, 305 N.E.2d 735 (1973).

The more difficult question arises when a person receiving a check does not have actual notice of insufficiency but has reason to believe that sufficient funds are not on deposit. Cashing a check at one's own bank does not normally form the basis for a conviction, 32 Am.Jur.2d *False Pretenses* § 81 (1982), even though the bank employee accepting the check does not have actual knowledge of the insufficiency. *See, e.g. State v. Mullin,* 225 N.W.2d 305 (Iowa 1975). Even though the bank did not have on its books an actual insufficiency, a bank official's knowledge that "something was going on" led to the reversal of the defendant's conviction for a check kiting scheme

in *State v. Creachbaum,* 24 Ohio App.2d 31, 263 N.E.2d 675 (1970), 28 Ohio St.2d 116, *aff'd,* 276 N.E.2d 240 (1971). "The injured party in cases of this nature cannot be defrauded by any representation made of a fact he knows or could have known by the exercise of ordinary prudence in using the means at hand to detect the true condition of the account." *Deitle v. State,* 363 S.W.2d 939, 940 (Tex.Crim.App.1963).

The record in this case shows that Wheeling Downs had reason to believe that there were insufficient funds in the appellant's account to cover the checks she wrote in July and August of 1982. As noted earlier, the general manager was aware that the appellant gambled on an almost daily basis; he characterized her as a "big spender" at Wheeling Downs. The general manager testified that, with any customer, if multiple checks totaling thousands of dollars were returned "we'd certainly stop cashing checks." Just weeks before the period in question here, the appellant had bounced not one but six checks at the track, totaling $4800. Nevertheless, the track cashed more checks for the appellant and then had her arrested when they were returned for insufficient funds.

■ There is no evidence on the record that the appellant engaged in an elaborate scheme to outwit the track manager or evade the normal check cashing procedures at Wheeling Downs. Her thoughts were simple and full of pathos. "My idea," she testified, "was that I'm going to be lucky this day and I'm really going to win and I'll be able to put that money—everything back in the checking account so that no checks will bounce." This statement is indicative of the lack of rationality which characterized the appellant's dealings with the track. The behavioral standards articulated in the West Virginia criminal statutes anticipate at least a minimum level of rationality. Our law has always recognized the defense of insanity.[1] When people can-

---

1. *State v. Grimm,* 156 W.Va. 615, 195 S.E.2d 637 (1973), *overruled on other grounds, State v. Nuckolls,* 166 W.Va. 259, 273 S.E.2d 87 (1980), reviews the history of the various tests for making a defense on the basis of insanity. The old rule

stated in *M'Naghten's Case,* 10 Clark & Fin. 200, 8 Eng.Rep. 718 (1843), was that a defendant must labor "under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing, or as not to

not appreciate the wrongfulness of their actions or are not capable of conforming their conduct to the requirements of the law, "they are not morally blameworthy and, not being morally blameworthy, cannot be the proper subjects of punishment." M. Moore, *Law and Psychiatry* 244 (1984).[2] The very essence of the mental disorder known as pathological gambling is that the victim "is chronically and progressively *unable to resist impulses to gamble.*" American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 312.31 (3d ed. 1980) (emphasis added).

█ The appellant claims she was unable to conform her conduct to the requirements of the law. Our decision today is not based on an acceptance of that contention, but from the evidence of record the appellant had become so involved in heavy gambling and cashing large checks, some of which were returned for insufficient funds, that her pattern of aberrant behavior should have been obvious to the track employees with whom she dealt. Wheeling Downs had an elaborate procedure for approving and cashing checks and for collecting checks returned for insufficient funds on deposit. The appellant had already written six bad checks for nearly five thousand dollars when she wrote the checks involved here. Nevertheless, the track did not attempt to verify her account balance, to limit the number and amount of checks she was allowed to cash, or to confront her immediately with evidence that her checks were once again being returned by the bank. Wheeling Downs took a not so well calculated risk in continuing to grant the appellant check cashing privileges so that she could continue to gamble. When that

risk failed to pay off and the track was unable to collect the money from the appellant, Wheeling Downs pressed criminal charges hoping for an order of restitution. Because Wheeling Downs had reason to believe the appellant did not have sufficient funds on deposit when the appellant's checks were accepted, the statue is inapplicable.

## II.

This Court is concerned by another matter not briefed in detail by the appellant. After Wheeling Downs' various debt collection procedures failed, the track obtained arrest warrants for the appellant. The warrants were kept in the track offices and were served on the appellant by an off-duty police officer moonlighting at the track. The appellant was then taken to the magistrate's office and released on bond pending a preliminary hearing. Instead of proceeding with the scheduled preliminary hearing, however, the assistant prosecutor on duty that day undertook to negotiate an arrangement whereby the state would not proceed with the criminal charges so long as the appellant made restitution directly to Wheeling Downs.

The general manager testified quite frankly at trial that Wheeling Downs only pressed charges in order to collect the money the appellant owed. The assistant prosecuting attorney testified that informal restitution arrangements such as the one involved here are common, and that he felt authorized to enter into such arrangements because of his ability "to resolve [cases] by way of plea agreement or what have you." Plea agreements are, of course, covered by Rule 11(e) of the West Virginia Rules of

know that what he was doing was wrong." *Id.*, 8 Eng.Rep. at 719. We rejected the M'Naghten Rule in *Grimm* and similarly eschewed the "irresistible impulse" test defined in *Parsons v. State*, 81 Ala. 577, 2 So. 854 (1887), and the "product" test articulated in *Durham v. United States*, 214 F.2d 862 (D.C.Cir.1954) (*overruled, United States v. Brawner*, 471 F.2d 969 (D.C.Cir. 1972)). West Virginia adopted the Model Penal Code approach, which says that a defendant should not be held criminally responsible if, because of a mental disorder, he lacks substantial capacity either to appreciate the wrongful-

ness of his conduct or to conform his conduct to the requirments of the law. *Grimm*, 156 W.Va. at 628, 195 S.E.2d at 645.

**2.** This Court has observed that such a person will not be punished for his actions under our laws. "Punishing a person who doesn't understand what he is doing or can't control his actions would take us back to the time when the mentally ill were randomly incarcerated or tortured with demonic witch cures. It would be cruel and senseless act...." *State v. Samples*, 174 W.Va. 584, 328 S.E.2d 191 n. 4 (1985).

Criminal Procedure, are structured to protect a defendant's constitutional rights, and involve judicial oversight. The arrangement made by the assistant prosecuting attorney must, then, have fallen into his category of "what have you."

The arrangements made in this case have a distinctly unsavory flavor. Wheeling Downs apparently saw the appellant's arrest as the next step in its collection process. The track employed the police officer for its own private purposes, presumably the provision of security services. The security director for Wheeling Downs summoned his employee, the policeman, and had him serve the arrest warrants on the appellant, which is part of a policeman's official duty. *See* West Virginia Code § 8–14–3 (1984 Replacement Vol.). Essentially, then, the officer was engaged in privately motivated conduct while clothed with the police power of the state. This use of the official powers of a policeman under the direction of a private party seems to us to be improper.

■ The police power of the State of West Virginia is not for hire. In *Ferrell v. State Compensation Commissioner*, 114 W.Va. 555, 172 S.E. 609 (1934), we said:

> It is general law that where a public peace officer, within his territorial jurisdiction, undertakes to discharge a duty which comes within the purview of his office, he is presumed to act in his official capacity. For his services in such connection he may have recompense only as fixed by law. A promise of a third person, whether individual or corporate, to remunerate him for such services is against public policy....

*Id.* 114 W.Va. at 556, 172 S.E. at 610 (citations omitted). The bribery and corrupt practices act, West Virginia Code § 61–5A–1 *et seq.* (1984 Replacement Vol.), provides that a person is guilty of bribery if he offers or confers any pecuniary benefits as consideration for the recipient's official action as a public servant.

The state's role in negotiating the appellant's agreement to repay the track seems to condone the view of the legal system as a part of the debt collection process. The threat of prosecution for failure to make the required payments smacks of the generally discredited practice of imprisonment for debts. *See* 30 Am. Jr.2d *Executions* § 865 (1967).

This Court has previously held that "[t]he prosecuting attorney has a duty to vindicate the public's constitutional right of redress for a criminal invasion of rights." Syl.Pt. 6, *State ex rel. Skinner v. Dostert*, 166 W.Va. 743, 278 S.E.2d 624 (1981). The Legislature has declared that, "when [the prosecutor] has information of the violation of any penal law ..., he shall institute and prosecute all necessary and proper proceedings against the offender." W.Va.Code § 7–4–1 (1984 Replacement Vol.).

■ A prosecutor may, for the public good and for the vindication of the public interest, exercise discretion in deciding which of several possible charges to bring against an accused or in refraining from prosecuting a cause when, in good faith, he doubts the guilt of the accused or feels the case is not capable of adequate proof. *Skinner*, 166 W.Va. at 752, 278 S.E.2d at 631. Otherwise, however, the prosecutor's duty is mandatory and nondiscretionary. *Ginsberg v. Naum*, 173 W.Va. 510, 512, 318 S.E.2d 454, 455–56 (1984); *State ex rel. Hamstead v. Dostert*, 173 W.Va. 133, 313 S.E.2d 409 (1984).

■ The ad hoc, informal fashion in which the appellant's agreement to pay was negotiated and the subsequent impression that the state's prosecutorial resources are available as a debt collection tool are examples of the difficulties which arise when the spirit of the law is shunned. The prosecutorial services of the state are not for private use in civil debt collection. Prosecuting attorneys in this state are not authorized to divert cases prior to bringing formal charges where there is probable cause to believe the accused is guilty.

The judgment of the Circuit Court of Ohio County is reversed.

Reversed.

BROTHERTON, Justice, concurring:

I concur with the views expressed by the majority, but write separately to discuss further the informal restitution arrangement between the assistant prosecutor and Orth. The assistant prosecutor's failure to proceed with the prosecution against Orth was improper.

While a prosecutor is vested with discretion in the control of criminal cases, "a prosecutor may abuse his or her discretion by an unreasonable failure to prosecute." *State ex rel. Hamstead v. Dostert,* 173 W.Va. 133, 313 S.E.2d 409, 416 n. 2 (1984); *see State ex rel. Skinner v. Dostert,* 166 W.Va. 752, 278 S.E.2d 624, 631 (1981). "With respect to the determination of whether to seek an indictment, the ultimate criterion must be whether, in the prosecutor's professional judgment, it appears from the evidence that there is probable cause to believe an offense has been committed and that the defendant has committed it." *Hamstead,* 173 W.Va. at 138–39, 313 S.E.2d at 415; *see* West Virginia Code of Professional Responsibility DR 7–103(A) (1987).[1] Once, however, the prosecutor has made a determination that criminal charges are supported by probable cause, the duty to seek an indictment becomes mandatory and falls outside the scope of a prosecutor's discretionary duties. *See Hamstead,* 173 W.Va. at 139, 313 S.E.2d at 415. Once, therefore, the assistant prosecutor had probable cause to believe that a crime had been committed against Wheeling Downs and that Orth had committed the crime, the assistant prosecutor had a mandatory duty to seek an indictment against Orth.

Moreover, W.Va.Code § 62–2–25 (1984) prohibits, absent court approval, prosecutorial interference with the issuance of indictments and presentments.[2] The assistant prosecutor's arrangement with Orth to forestall presentment of the bad check warrants to the grand jury, so long as Orth

made restitution to Wheeling Downs, cannot be disguised as some sort of plea bargaining agreement. The restitution arrangement, in fact, constituted debt collection by a government official for a private party and borders on malfeasance in office.

---

**1.** West Virginia Code of Professional Responsibility DR 7–103(A) provides:

A public prosecutor or other government lawyer shall not institute or cause to be instituted criminal charges when he knows or it is obvious that the charges are not supported by probable cause.

**2.** West Virginia Code § 62–2–25 (1984) provides:

If any prosecuting attorney shall compromise or suppress any indictment or presentment without the consent of the court entered of record, he shall be deemed guilty of malfeasance in office, and may be removed therefrom in the mode prescribed by law.