395 S.E.2d 563

Richard L. TRUMKA, Cecil Roberts and John Banovic on Behalf of the International Union, United Mine Workers of America

v.

Honorable John C. ASHWORTH, Judge of the Circuit Court of Raleigh County, and New Beckley Mining Corporation.

No. 19631.

Supreme Court of Appeals of West Virginia.

July 24, 1990.

James M. Haviland, Terry M. Jordan, McIntyre, Haviland & Jordan, Charleston, for Richard L. Trumka, Cecil Roberts and John Banovic.

John C. Ashworth, Judge, Circuit Court, Beckley, pro se.

BROTHERTON, Justice:

This matter comes before the Court on a petition for a writ of prohibition by the petitioners, Richard L. Trumka, Cecil Roberts, and John Banovic, on behalf of the International Union, United Mine Workers of America, against the respondents, the Honorable John C. Ashworth, Judge of the Circuit Court of Raleigh County, West Virginia, and New Beckley Mining Corporation. The petitioners ask this Court to prohibit the respondent judge from enforcing his February 16, 1990 order, which required the petitioners to pay one-half of the $31,077.14 overtime expenses incurred by the sheriff of Raleigh County as a result of a court ordered surveillance which

was necessary to maintain the peace at a strike bound mine site in Glen Daniels, West Virginia, from June 21, 1989 to August 14, 1989.

On January 23, 1989, Local Union No. 1895, United Mine Workers of America, began a selective strike against New Beckley Mining Corporation. The employees and former employees of the company were represented for collective bargaining purposes by the petitioner, the International Union, United Mine Workers of America. As the strike progressed, the company sought injunctive relief. On March 28, 1989, the court issued a general strike injunction prohibiting violence and other tortious behavior at or near the picket line. Soon thereafter, both parties filed contempt actions, and hearings were held on various allegations of violence on May 10, 12 and 15, 1989. However, fault was not assessed against any of the parties as the court declined "to bring the responsibility for the perpetration of such actions home to the company, the union or to any individual identified as being associated with either of the principals." The injunction was broadened by an order entered on May 24, 1989, in which New Beckley Mining Corporation was directed to light certain portions of its facilities near the pickets at night, to drive at speeds of less than fifteen miles per hour near the pickets, and to limit the parking of replacement workers' vehicles and recreational activities to certain areas. Both parties were warned to refrain from a wide variety of violent behavior.

Allegations of violence continued, and on June 21, 1989, at the request of the litigating parties, the court ordered the sheriff to maintain an around-the-clock patrol of the mine and picket sites. This order remained in effect until it was vacated by the court on August 14, 1989. Eventually, the mine was closed by its owners and the strike ended. On December 21, 1989, the court entered an *ex parte* order directing the county commissioners of Raleigh County to show cause why they should not pay the expenses of the overtime surveillance. The show cause order was heard on January 8, 1990, at which time the court called and interrogated its own witnesses, including the sheriff and an accountant from the county commission.

From the evidence presented, the court determined that the costs incurred by the sheriff for the overtime surveillance were $31,077.14 and that these costs should be divided equally between the officers of the International Union, United Mine Workers of America, and the New Beckley Mining Corporation. Both parties objected to the court's order, although New Beckley Mining Corporation paid its one-half share of the $31,077.14.

The issue now before this Court is whether the trial court properly assessed costs against the parties for expenses incurred as a result of the injunction which ordered the sheriff of Raleigh County to provide twenty-four-hour patrols of the strike area. In its order assessing costs, the court states:

> Believing that necessity is the mother of innovation, the court strikes out to clear a new field and to plow the resultant new ground by imposing upon the parties an order that requires each of them to bear one-half of the overtime costs.

Although the court order states that "the parties" shall bear one-half of the overtime costs, in this case, "the parties" refers only to the United Mine Workers of America and the New Beckley Mining Corporation, even though other parties were part of the original injunctive action.

While we find no error in the fact that Judge Ashworth heard this matter on his *ex parte* order to show cause and then called and interrogated his own witnesses, we believe the matter of extraordinary costs would have been better dealt with when both parties requested the increased surveillance[1] and not after the injunction

---

1. There is some evidence that New Beckley Mining Corporation offered to pay the sheriff for the extraordinary costs incurred in the twenty-four-hour surveillance, but that this offer was

had been dissolved without a finding of fault against either party.

■ West Virginia Code § 59–2–4 (1966) states that "[u]pon any motion … the court may give or refuse costs, at its discretion, unless it be otherwise provided." "At common law, costs were not awarded to the prevailing party in a suit. It is only by virtue of statute that the courts have jurisdiction to award costs." *State ex rel. Ringer v. Morris*, 82 W.Va. 492, 96 S.E. 926, 927 (1918). West Virginia Code § 59–2–8 provides that costs on final judgment shall be awarded to the prevailing party. In the case now before us, however, there was no prevailing party. In syllabus point 4 of *Morris*, this Court stated that:

> In a chancery suit for the purpose of determining between whom the controversy exists, all parties having the same interest to be subserved will be placed on one side, and those having an adverse interest on the other, notwithstanding this may make necessary a different alignment of parties than is made in the formal pleadings. *There can be no award of costs to a party to such suit against another, when the interests of each therein are the same, although one of them may be a plaintiff and the other a defendant.* (Emphasis added.)

In this case, both the plaintiffs and the defendants were interested in maintaining the peace while also protecting their individual rights and preventing the destruction of property. The cost of law enforcement is a charge to be borne by the taxpay-

ers, and, therefore, we must conclude that the court below exceeded its authority when it attempted to impose the costs of enforcing its injunction upon the parties to the labor dispute. "The police power of the State of West Virginia is not for hire." *State v. Orth*, 178 W.Va. 303, 359 S.E.2d 136, 141 (1987). In syllabus point 4 of *McCarty v. Harless*, 181 W.Va. 719, 384 S.E.2d 164 (1989), this Court held that "[s]ince the sheriff and county commission have a clear legal duty to pay overtime properly performed and reported, any monies owed should be paid first from the sheriff's budget until exhausted. Once the sheriff's budget is depleted, the county commission is responsible for amounts legally owed."

■ "[W]here costs not allowed by statute are awarded, prohibition will lie to prevent the execution of the judgment therefor." *State ex rel. Ringer v. Morris*, 82 W.Va. 492, 96 S.E. 926, 927 (1918), citing *Warman v. Herndon*, 81 W.Va. 574, 94 S.E. 977 (1918). There being no statutory authority for the action of the court in this case, a writ of prohibition will lie to prohibit the enforcement of the February 16, 1990 order of the Circuit Court of Raleigh County.

Writ granted.

rightly refused under the provisions of W.Va. Code § 6–3–1(a)(5) (1990), which states:

> A sheriff … shall not receive any compensation or reimbursement, *directly or indirectly, from any person, firm or corporation for the performance of any private or public services or duties* … A sheriff and his deputies in any county, irrespective of the number of deputies, shall receive for the performance of their public services and duties no compensation or remuneration except such as may be regularly provided and paid out of public funds to the amount and in the manner provided by law. *No sheriff* or deputy sheriff in any county, irrespective of the number of deputies, *may receive, directly or indirectly, any* gift or *donation from any person,* firm or corporation. [Emphasis added]