398 S.E.2d 521

**STATE of West Virginia**

v.

**William "Bill" PETRICE.**

**No. 19402.**

Supreme Court of Appeals of West Virginia.

Oct. 25, 1990.

Robert P. Martin, Arthur T. Ciccarello, Lewis, Ciccarello & Friedberg, Charleston, for William Petrice.

Roger W. Tompkins, Atty. Gen., Richard M. Riffe, Sr. Asst. Atty. Gen., Charleston, for State of W. Va.

PER CURIAM:

The appellant, William Petrice, appeals his conviction by a jury in Lewis County of grand larceny. The appellant contends that: (1) the state failed to prove that he had the intent to steal the property; (2) the state failed to prove the ownership of the property; (3) the trial court should have dismissed the indictment on the ground that there had been a two and one-half year pre-indictment delay; (4) the trial court should have dismissed the indictment on the ground that the criminal process was improperly used to collect a civil debt; and (5) the prosecuting attorney's statements to the jury in closing argument that the appellant was lying constituted plain error. We find no reversible error, and accordingly, the judgment of the Lewis County Circuit Court is affirmed.

The appellant owns and operates Chapel Lumber Company, a small sawmill located in Lewis County, and has been engaged in the timbering business for approximately fifteen years. In the spring of 1985, the appellant was approached by Thomas Riley about the possibility of timbering a tract of land known as the "Hines property." Thomas Riley was authorized by the other eight heirs to the Hines property to sell the timber rights. The Hines property was located adjacent to a tract of land known as the "M.B. Riley farm," and also to a tract of land known as the "Rastle property." Thomas Riley was the grandson of Patrick Hines and of M.B. Riley.

During the negotiations, the appellant agreed to pay Thomas Riley $3600 for approximately 30 acres worth of timber.

Thomas Riley gave the appellant a map of the Hines property, and showed him the approximate location of the boundary fence which separated the Hines property from the M.B. Riley farm. The appellant acknowledged that he was familiar with the Hines property, and that he knew where the fence was located. Since the appellant assured him that he knew the location of the Hines property and of the boundary fence, Thomas Riley did not go to the property with him.

The appellant subsequently began the timbering operations on the Hines' property, which consisted of creating roads, cutting timber, and hauling the timber to the appellant's mill. During these timber operations, however, the appellant crossed the boundary line between the Hines' property and the M.B. Riley farm, and removed approximately twenty acres of timber from that property.

While the appellant was cutting the timber on the M.B. Riley tract, Bernadine Feagans, a granddaughter of M.B. Riley, heard the sound of chain saws operating while she was at a camp she maintains on the M.B. Riley farm. Mrs. Feagans subsequently notified her nephew, John Riley, that the appellant was cutting timber on the M.B. Riley farm. John Riley went to the appellant's sawmill, and told the appellant that he wanted him to stop cutting the timber on the M.B. Riley farm. The appellant told John Riley that if he had cut the trees on the M.B. Riley farm, then he would pay him for them.

Thereafter, Mrs. Feagans and John Riley went to discuss the matter with the appellant at his sawmill. The appellant told them that he would send his forester out to the property to make an estimate of the timber that was cut, and that if he cut the timber, he would pay them for it.

Several weeks later, the parties met again to discuss the timber. John Riley and Mrs. Feagans advised the appellant that they had obtained an estimate of the value of the timber which amounted to approximately $8500. Mrs. Feagans and John Riley asked the appellant to pay them $15,000 for the timber because they believed the appellant had cut some veneer timber which was of a greater value than the saw timber. The appellant's appraiser set the value of the timber at approximately $8200. However, when Mrs. Feagans and John Riley requested the appellant to pay them $15,000, he made a counteroffer of $4000. At that point, the negotiations between the parties ended.

In December of 1985, Trooper Harold Talbert approached the appellant regarding his timber operations on the M.B. Riley farm. Trooper Talbert gave the appellant his *Miranda* rights, and then the appellant stated to him that "a forester may have gotten me into trouble out there."

The appellant was indicted on a charge of grand larceny in November of 1987. A trial by jury was held, and at the conclusion, the jury found the appellant guilty of grand larceny. The appellant received an indeterminate sentence of not less than one, nor more than ten years. However, the trial judge suspended that sentence and placed the appellant on probation for a term of three years. The appellant now appeals his grand larceny conviction.

## I

The appellant first contends that the trial court erred by failing to grant a judgment of acquittal because the state failed to prove that the appellant possessed the requisite intent to steal the timber. The appellant maintains that he believed he was cutting timber on the Hines property, and that he was mistaken in his belief that a certain wire fence was the boundary fence between the Hines property and the M.B. Riley farm.

The standard of review followed by this Court to test the sufficiency of the evidence to support a guilty verdict was stated in syllabus point 1 of *State v. Starkey*, 161 W.Va. 517, 244 S.E.2d 219 (1978):

In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The

evidence is to be viewed in the light most favorable to the prosecution. To warrant interference with a verdict of guilt on the ground of insufficiency of the evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done.

Reviewing the facts most favorable to the prosecution, we find from the record that the appellant had previously been cutting timber on the Rastle property which also adjoined the M.B. Riley farm. Furthermore, he had viewed this remote area with a forester, Terry Jones. Moreover, the appellant had expressed his interest to Thomas Riley in cutting the timber on the M.B. Riley farm, and asked Thomas Riley to use his influence over the other owners of the tract to arrange a sale of that timber.[1] Thomas Riley gave the appellant a map of the Hines property, and showed him the approximate location of the boundary fence. The appellant told Thomas Riley that he was aware of the location of the boundary fence on the Hines property. Yet, he directed his employees to cut to a fence which was located on the M.B. Riley farm. His foreman, Jack Alexander, testified that he remembered seeing the first fence, and that the appellant told him to cut the wire from the fence out of the timber. Furthermore, there was testimony that the appellant was experiencing financial problems during the time he was cutting the timber on the Hines property and the M.B. Riley farm. Finally, the most salient fact is that the appellant cut 20 acres of timber on the M.B. Riley farm in addition to the 30 acres of timber he was authorized to cut on the Hines property. These facts indicate that the appellant had the intent to steal the timber.

There was conflicting testimony in this case, and after hearing that testimony, the jury concluded that the appellant was guilty of grand larceny. Thus, upon review of the foregoing facts, we are not convinced that there was insufficient evidence to support the guilty verdict.

## II

The appellant next contends that the state failed to prove the ownership of the property set forth in the indictment, and that unless the property is taken without the consent of the owner, there is no criminal intent sufficient to support a larceny conviction. The appellant asserts that the state failed to prove that the owners named in the indictment, Bernadine Feagans, John Riley, or the M.B. Riley heirs, had any ownership interests in the M.B. Riley property.

The elements of the crime of larceny were stated by this Court in syllabus point 3 of *State v. Louk*, 169 W.Va. 24, 285 S.E.2d 432 (1981): "To support a conviction for larceny at common law, it must be shown that the defendant took and carried away the personal property of another against his will and with the intent to permanently deprive him of the ownership thereof."

Furthermore, the test followed by this Court in determining the sufficiency of an indictment was stated in syllabus point 1 of *State v. Mullins*, 181 W.Va. 415, 383 S.E.2d 47 (1989):

'An indictment for a statutory offense is sufficient if, in charging the offense, it substantially follows the language of the statute, fully informs the accused of the particular offense with which he is charged and enables the court to determine the statute on which the charge is based.' Syl. pt. 3, *State v. Hall*, 172 W.Va. 138, 304 S.E.2d 43 (1983).

---

1. The appellant originally offered to pay Thomas Riley $3,000 for the timber but Mr. Riley insisted on $3600 to be divided equally among the nine heirs. The appellant then offered to pay Mr. Riley $3600 if he would help the appellant acquire the timber rights to the M.B. Riley farm. Thomas Riley told the appellant that he couldn't promise him the timber on the M.B. Riley farm because there were too many heirs, and that it would be "a long and complicated affair." The appellant, however, testified that he did not ask Mr. Riley to help him acquire the timber rights to the M.B. Riley farm, and that it was Mrs. Feagans who called him about the possibility of cutting the timber on the M.B. Riley farm.

■ Finally, as we stated in syllabus point 1 of *State v. Goodnight*, 169 W.Va. 366, 287 S.E.2d 504 (1982): "An indictment for grand larceny that follows the language of *W.Va.Code*, 62–9–10, is sufficient."

*W.Va.Code*, 61–3–13 [1977], the state's grand larceny statute, provides:

(a) If any person commits simple larceny of goods or chattels of the value of two hundred dollars or more, such person shall be guilty of a felony, designated grand larceny, and, upon conviction thereof, shall be confined in a penitentiary not less than one nor more than ten years, or, in the discretion of the court, be confined in the county jail not more than one year and shall be fined not more than five hundred dollars.

■ In the instant case, the indictment charged that the appellant "committed the offense of 'Grand Larceny' by unlawfully and feloniously stealing, taking, and carrying away timber of a value more than two hundred dollars ($200.00), the property of Bernadine Feagans and John Riley and the M.B. Riley Heirs, in violation of Chapter 61, Article 3, Section 13 of the West Virginia Code, as amended, against the peace and dignity of the State." [2]

The indictment follows the language of *W.Va.Code*, 62–9–10, specifically refers to *W.Va.Code*, 61–3–13, and sufficiently apprises the appellant of the grand larceny charge so that he could prepare for trial. *Mullins, supra*, 181 W.Va. at 419, 383 S.E.2d at 51. Furthermore, the state had to show that the accused "took and carried away *the personal property of another against his will* and with the intent to permanently deprive him of the ownership thereof." (emphasis added). John Riley, as one of the owners of the M.B. Riley farm and as a representative of the other owners of that property, testified that the timber was taken without consent of the owners. Thus, the indictment was sufficient, and the state showed that the owners

did not consent to the removal of their timber. Clearly, the appellant's argument that the trial court erred by failing to grant a judgment of acquittal on the ground that the state had failed to prove the ownership of the property, as set forth in the indictment, is without merit.

### III

The appellant's third assignment of error is that the trial court erred by failing to dismiss the indictment for a pretrial delay of two and one-half years. The appellant argues that the two and one-half year delay between the time the alleged larceny was committed and the indictment was presented is *prima facie* excessive.

■ We stated in syllabus point 2 of *Hundley v. Ashworth*, 181 W.Va. 379, 382 S.E.2d 573 (1989):

The Due Process Clause of the Fifth Amendment to the United States Constitution and Article III, Section 10 of the West Virginia Constitution require the dismissal of an indictment, even if it is brought within the statute of limitations, if the defendant can prove that the State's delay in bringing the indictment was a deliberate device to gain an advantage over him and that it caused him actual prejudice in presenting his defense.

We pointed out in *Hundley* that "the State in rebutting the prejudice need only show that the delay was not deliberately designed to gain a tactical advantage over the defendant. Once this is shown, the defendant is not entitled to prevail on a motion to dismiss the indictment under a due process claim for delay." *Id.* 181 W.Va. at 383, 382 S.E.2d at 576–77.

■ In the case now before us, the appellant has not demonstrated that the state's delay in bringing the indictment was a deliberate device to gain an advantage over him nor has he shown that the

---

2. At trial, Bernadine Feagans testified that she was not one of the owners of the M.B. Riley property. John Riley, on the other hand, inherited an interest in that property from his Uncle Willie Riley. The owners of the M.B. Riley farm gave Mrs. Feagans and John Riley a power of attorney to prosecute this matter.

delay has caused him actual prejudice in presenting his defense.[3]

## IV

■ The appellant further contends that the trial court erred by failing to dismiss the indictment for the improper use of the criminal process to collect a civil debt. Essentially, the appellant is arguing an abuse of the criminal process.[4] We recognized in syllabus point 2 of *Wayne County Bank v. Hodges,* 175 W.Va. 723, 338 S.E.2d 202 (1985):

'Generally, abuse of process consists of the willful or malicious misuse or misapplication of lawfully issued process to accomplish some purpose not intended or warranted by that process.' *Preiser v. MacQueen,* [177 W.Va. 273, 279, 352 S.E.2d 22, 28 (1985)].

■ This Court observed in syllabus point 5 of *State v. Orth,* 178 W.Va. 303, 359 S.E.2d 136 (1987) that: "The prosecutorial services of the state are not for private use in civil debt collection." However, we further recognized that, "when [the prosecutor] has information of a violation of any penal law ..., he shall institute and prosecute all necessary and proper proceedings against the offender." [citation omitted]. *Id.* 178 W.Va. at 308, 359 S.E.2d at 141.

Clearly, the conduct alleged by the state to have been committed by the appellant is covered under *W.Va.Code,* 61-3-13. Furthermore, there was a legitimate complaint

to the prosecutor, the police investigated the matter, and the grand jury returned an indictment. The conduct for which the appellant was found guilty by a jury was criminal in nature, and thus, we find no abuse of the criminal process.

## V

The appellant finally asserts that the prosecutor's remarks in closing argument that the appellant's testimony was untruthful constituted plain error.[5] The appellant also avers that the prosecutor improperly commented on the appellant's pretrial silence and misstated the evidence.[6]

■ It is improper for a prosecutor to interject his opinion as to the credibility of a witness as we recognized in syllabus point 3 of *State v. Critzer,* 167 W.Va. 655, 280 S.E.2d 288 (1981): "It is improper for a prosecutor in this state to '[a]ssert his personal opinion as to the justness of a cause, as to the credibility of a witness ... or as to the guilt or innocence of the accused....' ABA Code DR7-106(C)(4) *in part."* We further observed in *State v. England,* 180 W.Va. 342, 351, 376 S.E.2d 548, 557 (1988), that "the purpose of the *Critzer* rule is to prevent the use of the prosecutor's *status* as a means to bolster witness credibility." 180 W.Va. at 351, 376 S.E.2d at 557.

■ We also stated in syllabus point 1 of *Critzer,* that a prosecutor must set a tone of fairness and impartiality:

this Court to take notice of error, including instructional error occurring during the proceedings, even though such error was not brought to the attention of the trial court. However, the doctrine is to be used sparingly and only in those circumstances where substantial rights are affected, or the truth-finding process is substantially impaired, or a miscarriage of justice would otherwise result.' Syllabus Point 4, *State v. England,* 180 W.Va. 342, 376 S.E.2d 548 (1988).

---

3. We note that Officer Talbert testified that the reason for the delay in bringing the indictment was to locate witnesses who had worked for the appellant. Some of these witnesses had moved away from the area.

4. The appellant has not cited any cases to support this argument. The appellant merely accuses John Riley and Bernadine Feagans of committing a crime pursuant to *W.Va.Code,* 61-2-13 [1923], which is the state's extortion statute.

5. We want to clarify the application of the plain error doctrine. As we stated in syllabus point 6 of *State v. Collins,* 186 W.Va. 1, 409 S.E.2d 181 (1990):

'The plain error doctrine contained in Rule 30 and Rule 52(b) of the West Virginia Rules of Criminal Procedure is identical. It enables

6. As the state has pointed out in its brief, the prosecutor remarked on statements made by the appellant to Officer Talbert after he had been given his *Miranda* warnings, rather than on the appellant's pretrial silence. Furthermore, the appellant has failed to point out any statements made by the prosecutor in the closing arguments which misquoted witnesses or misstated the evidence.

'The prosecuting attorney occupies a quasi-judicial position in the trial of a criminal case. In keeping with this position, he is required to avoid the role of a partisan, eager to convict, and must deal fairly with the accused as well as the other participants in the trial. It is the prosecutor's duty to set a tone of fairness and impartiality, and while he may and should vigorously pursue the State's case, in doing so, he must not abandon the quasi-judicial role with which he is cloaked under the law.' Syl. pt. 3, *State v. Boyd,* [160] W.Va. [234], 233 S.E.2d 710 (1977).

In his closing argument in this case, the prosecutor stated:

I submit to you that there's been two testimonys [sic], two evidences, two stories told here, very similar, but strikingly different. The State's case and what the Defendant, Bill Petrice says. And if you believe what Bill Petrice told you, I'm telling you right now, there's no guilty verdict to be had here today. If you believe what he told you. But I submit to you that he did not testify truthfully to you when he was in here yesterday. And he had the opportunity to come in here and testify truthfully to you.

The prosecutor stated later in his closing argument: "I'm telling you the Defendant wasn't truthful to you."

Counsel on behalf of the appellant objected after the prosecuting attorney again stated that the appellant was not telling the truth. At that point, the trial court sustained the objection and directed the prosecuting attorney to "cease and desist from doing that[.]" Defense counsel, however, did not request that the trial court instruct the jury to disregard the prosecutor's remarks.

It was improper for the prosecuting attorney to interject his opinion as to the truthfulness of the appellant. The prose-

cutor was permitted to argue any position based on his analysis of the evidence, but he should not have expressed his belief in the veracity of the appellant. We do not, however, believe that the impropriety of the prosecutor's statements in this closing argument rises to the level of the prosecutor's improper statements in closing argument in *Critzer.*[7] Had there been other error in this case, the prosecutor's comments would have compounded that error and a new trial would have been warranted. However, standing alone, these comments did not substantially impair the truth-finding process nor did they affect the substantial rights of the appellant to the extent that a new trial would be warranted.

Thus, for the reasons stated herein, we find no error in the trial of this case, and we affirm the appellant's conviction.

Affirmed.

---

7. In *Critzer,* the prosecutor interjected his opinion as to the guilt of the defendant, asserted his belief in the truthfulness of his witnesses, while attacking the truthfulness of the defendant's witnesses. 167 W.Va. at 660–61, 280 S.E.2d at 292. The prosecutor also "compared the defendant to a vulture and appealed to local prejudice by indicating the defendant came to West Virginia to victimize dumb hillbillies." 167 W.Va. at 661, 280 S.E.2d at 292. The prosecutor in *Critzer* compounded the prejudicial effect of these improper remarks by going on to argue facts which were not in evidence.