432 S.E.2d 32

**STATE of West Virginia ex rel. Jane L. CLINE, Commissioner, West Virginia Department of Motor Vehicles, Petitioner,**

v.

**Honorable Frank J. MAXWELL, Judge of the Circuit Court of Harrison County; Craig Swann; Dale R. Sinclair; Robert Kern; Jackie Thompson; Jon Davis; Tom Casey; Mike Skinner; Bruce Davis; Robert Closson; Debbie Cooper; Robert Moyer; Hobert Powers; Clifford Wilfong; Melvin Lantz; William Gordon; Joe Shuman; Doug Snider; and Frederick Bumgardner, Respondents.**

No. 21508.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 2, 1993.

Decided April 8, 1993.

Darrell McGraw, Atty. Gen., Paul E. Jordan, Sr. Asst. Atty. Gen., Claude S. Smith, III, Asst. Atty. Gen., Charleston, for petitioner.

Jerald E. Jones, West and Jones, Clarksburg, for respondent Frederick Bumgardner.

James A. Matish, Clarksburg, for other individual respondents.

NEELY, Judge:

This case raises the question of what relief should be granted to licensees whose administrative license revocation hearings are excessively delayed by the West Virginia Department of Motor Vehicles. The revocation hearings for the licensees, all of whom are accused of driving under the influence (DUI), were delayed in excess of six months. After the circuit court found that a six-month delay was a *per se* deprivation of due process, and ordered the Department to return of the licensees' operator's licenses and dismiss the administrative charges, the Department sought a writ of prohibition from this Court. Although we agree with the circuit court that after a six-month hearing delay, the licensees' regular operator's licenses should returned, we find that the circuit court erred in requiring the dismissal of the administrative charges pending against the licensees, and, therefore, we grant a writ of prohibition as moulded.

The following facts are typical of the licensees' cases. When Robert G. Closson was arrested on 7 December 1991 for DUI, his operator's license was confiscated and he was issued a thirty-day temporary driving permit. After the Department received the arresting officer's affidavit, the Department, on 19 December 1991, ordered a six-month suspension of Mr. Closson's license and advised him that he could request an administrative hearing "within ten (10) days after receipt of this ORDER." After Mr. Closson timely requested a hearing, the Department, by letter dated 13 January 1992, notified Mr. Closson that his hearing, scheduled for 21 January 1992, was continued on the Commissioner's motion. The Department's schedule/continuation letter provided neither a new hearing date nor any reasons for the delay. After the Department received Mr. Closson's request for a hearing, the Department sent him a temporary driving permit, effective for one hundred eighty days (6 months). After an eleven-month delay from his originally scheduled hearing, Mr. Closson petitioned the circuit court to require the Department to return his regular photo operator's license and to prohibit the Department from conducting the hearing.

A similar pattern occurred in the cases of the other seventeen licensees with the following differences: (1) eleven of the hearing schedule/continuation letters stated that the continuation was "[d]ue to circumstances beyond our [the Department's] control;" and (2) in several cases the licensees unsuccessfully requested the Department to dismiss the administrative charges. Although the delay between the DUI arrest and the 2 December 1992 circuit court hearing varied, each delay exceeded six

months.[1] In addition because delay exceeded six months, the licensees allege that when several of their six-month temporary driving permits expired, the Department delayed in extending the temporary permits and they were without temporary driving permits.[2]

Because of the Department's delay in conducting the hearings, the licensees petitioned the circuit court to require the Department to return their regular operator's licenses and prohibit the Department from any further administrative charges related to their DUI arrests. After a hearing on 2 December 1992, the circuit court granted the licensees' petitions because the "delay [in excess of six months] is unreasonable and such [is] a denial of due process and it's too late to even hold a hearing." The Department then petitioned this Court for a writ of prohibition to vacate the circuit court's order.

I

■ When a licensee is arrested for DUI, the regular operator's license is confiscated and a temporary permit is issued. If the licensee requests a hearing concerning his license revocation, the temporary permit is extended. *W.Va.Code* 17C–5A–2(a) [1992] ("the commissioner of motor vehicles shall extend the temporary license").[3] In the licensees' cases, the Department extended the temporary permits for one hundred eighty days (six months). When the temporary permits expired, the licensees, who had not been afforded hearings, sought extensions of their temporary permits. In some cases, the licensees sought permit extensions several times because the Department continued to delay

**1.** The following chart outlines the licensees' pertinent information.

| LICENSEE | ARREST DATE | SCHEDULED HEARING(S) | DELAY IN MONTHS |
|---|---|---|---|
| Craig Swann | 12/18/1991 | 2/14/1992 | (9) |
| Dale R. Sinclair | 2/10/1990 | 4/3/1990 6/8/1992 11/10/1992 | (32) |
| Robert Kern | 11/1/1991 | 12/9/1991 | (12) |
| Jackie Thompson | 2/16/1992 | 3/24/1992 | (8) |
| Jon Davis | 8/29/1991 | 10/11/1991 3/18/1992 | (14) |
| Tom Casey | 8/20/1991 | 9/30/1991 | (14) |
| Mike Skinner | 8/25/1991 | 10/11/1991 | (14) |
| Bruce Davis | 2/13/1992 | 3/23/1992 | (8) |
| Robert Closson | 12/7/1991 | 1/21/1992 | (11) |
| Debbie Cooper | 3/12/1992 | 3/31/1992 | (8) |
| Robert Moyer | 1/19/1992 | 3/4/1992 | (8) |
| Hobert Powers | 4/26/1992 | 6/1/1992 | (6) |
| Clifford Wilfong | 4/18/1992 | 5/5/1992 | (6) |
| Melvin Lantz | 3/28/1992 | 4/27/1992 | (7) |
| William Gordon | 3/28/1992 | 4/27/1992 | (7) |
| Joe Shuman | 4/19/1992 | 5/5/1992 | (6) |
| Doug Snider | 4/25/1992 | 5/27/1992 | (6) |
| Frederick Bumgardner | 2/1/1992 | 3/9/1992 2/2/1993 | (8) |

**2.** At the circuit court hearing only two persons were specifically identified as having a problem with an extension of their driving permits; however, neither of those persons is a respondents in this action because the circuit court, for reasons beyond the scope of this proceeding, refused their petitions for writs of prohibition and mandamus.

**3.** *W.Va.Code* 17C–5A–2(a) [1992] provides, in pertinent part:

Upon the written request of a person whose license to operate a motor vehicle ... has been revoked ..., the commissioner of motor vehicles shall extend the temporary license ... and afford the person an opportunity to be heard....

their hearings. The licensees allege that although they promptly requested permit extensions, they lacked driving permits because the Department delayed. In addition to lacking temporary permits, the licensees allege that their lack of photo operator's licenses inconvenienced them because they could not cash payroll checks, purchase items with checks, apply for passports, rent videos, test drive cars, rent cars, and do other routine things that require a regular photo operator's license for identification.

The Commissioner acknowledges the delays in holding the DUI revocation hearings but maintains that the continuances are part of her docket management. Because of the numerous hearing requests, the Commissioner claims that it "is logistically impossible" to hold the hearings within twenty days as required by *W. Va. Code* 17C–5A–2(b) [1992].[4] Because of the twenty-day requirement, "the Commissioner, out of necessity, sets a hearing date within twenty (20) days ... and then continues it on her own motion until an open hearing date becomes available." As of 30 September 1992, 111 Harrison County cases and 2,082 statewide cases were awaiting revocation hearings. Statewide, the Department has only ten active hearing examiners and the Harrison County hearing examiner conducts hearings in six counties. The Commissioner said that in October 1992, she "had attempted to set a total of 478 hearings" and during oral argument, said that another hearing examiner was assigned to Harrison County.

The Commissioner contends that the licensees were not deprived of their rights because they were still permitted to drive.

According to the Commissioner, the temporary permits' expiration was caused "by either a delay by the Division of Motor Vehicles in sending out the renewals or a delay by the petitioners themselves in requesting them." The Commissioner said that "the situation is easily remedied," but suggested no remedy.

Although there is a tendency to belittle the complications caused by the lack of a photo operator's license, the inability to cash a check at the grocery store, rent a video, or test drive a car creates substantial expense and annoyance. When the hearing delay exceeds six months, it is the licensees who must act to extend their permits; it is the licensees who must deal with the Department's renewal delays; it is the licensees who cannot drive because their temporary permits expired; and, it is the licensees who must cope with Departmental red tape.[5]

■ Due process requires a balance between the State's interest in law enforcement and the citizens' interest in being free from governmental harassment. In the present case, the license revocation procedures result from the State's interest in protecting its citizens from drunk drivers. The license revocation procedures, however, also protect the licensees' interests by requiring a hearing, if requested, before revocation and in the interim, the continuation of the privilege to drive. The license revocation procedures are designed to operate quickly with the hearing to "be held

---

4. *W. Va. Code* 17C–5A–2(b) provides, in pertinent part:

Any such hearing shall be held within twenty days after the date upon which the commissioner received the timely written request therefor, unless there is a postponement or continuance. The commissioner may postpone or continue any hearing on the commissioner's own motion, or upon application for each person for good cause shown. The commissioner shall adopt and implement by a procedural rule written policies governing the postponement or continuance of any such hearing on the commissioner's own motion or for the benefit of any law-enforcement officer or any person requesting such hearing, and such policies shall be enforced and applied to all parties equally.

5. We have long recognized that administrative agencies that perform quasi-judicial functions must comply with the mandate of the *West Virginia Constitution*, Act. III, Sec. 17, that "justice shall be administered without ... delay." *See* Syllabus Point 7, *Allen v. State, Human Rights Comm'n*, 174 W.Va. 139, 324 S.E.2d 99 (1984) ("administrative agencies preforming quasi-judicial functions have an affirmative duty to dispose promptly of matters properly submitted"); Syllabus Point 1, *Workman v. State Workmen's Compensation Comm'r*, 160 W.Va. 656, 236 S.E.2d 236 (1977) ("[l]ong delay in processing claims ... is not consistent with the declared policy of the Legislature"); *State ex rel. Bowen v. Flowers*, 155 W.Va. 389, 184 S.E.2d 611 (1971) (a seven-month delay in holding a hearing is unreasonable).

within twenty (20) days." *W.Va.Code* 17C–5A–2(b) [1992]. However, the heavy workload and the Department's understaffing have hobbled the system so that the hearing process takes months and the burden of the overworked system falls disproportionately on the licensees awaiting hearings.

■ The tragedy of drunk driving "cannot excuse the need for scrupulous adherence to our constitutional principles." *Grady v. Corbin,* 495 U.S. 508, 524, 110 S.Ct. 2084, 2095, 109 L.Ed.2d 548 (1990) (applying the double jeopardy clause of the Fifth Amendment to a drunk driver who caused a fatal accident). In order to redistribute the burden that the Department's delay places on the licensees, we find that if a revocation proceeding cannot be held and a decision rendered within six months because of Department-caused delays, the Department must return a licensee's regular operator's license before the expiration of the temporary driving permit. However, if the delay in the revocation proceedings is caused by the licensee, the burden of such delay remains with the licensee, who must apply for an extension of the temporary driving permit in order to continue to drive. After the licensee's operator's license is returned, the Department must follow its routine license procedures until an administrative decision is reached concerning the revocation. If the administrative hearing upholds the revocation, the regular operator's license must be surrendered.

This decision, requiring to the Department to return the regular operator's license in cases where the delay caused by the Department exceeds six months, is designed to encourage the Department to set up a hearing schedule that decides cases within six months and if the system fails, to shift the burden of the delay back to the Department. West Virginia citizens, whose opportunity for hearings is delayed unreasonably, should not be burdened with the additional expense, annoyance and hassle that results from the lack of a regular operator's license.

■ There is also a second problem in the revocation procedures followed by the Department. After the licensees requested a hearing, the Department, by letter, acknowledged the request, scheduled a hearing within the statutory limit and then continued the hearing to an unspecified date. The Department's letters failed to provide a reason for the continuance or said that the delay was caused by "circumstances beyond our control." [6] The Department's letters are defective because they fail to reschedule the hearing for a definite date and to provide an appropriate reason for the continuance. We note that in its brief the Department says that the current schedule/continuation letters now provide the reason for the continuance, which usually involves docket management problems. We find that when the Department continues a revocation hearing, the Department's notice must state the reasons for the continuance, identify who requested the continuance and provide a specific future hearing date.

## II

■ Although we agree with the circuit court that a six-month delay by the Department is unreasonable, we find that the delay, standing alone, is not sufficient to jus-

---

6. *W.Va.Code* 17C–5A–2(b) [1992] requires the adoption of written policies governing a hearing's postponement on the Commissioner's own motion. *See supra* note 4 for the code's text. The Commissioner, effective 1 May 1992, adopted the following pertinent regulations:

Continuance on the Motion of the Commissioner—The Commissioner may postpone or continue a hearing on his on [sic] her own motion. The motion shall be for good cause including, but not limited to docket management, availability of hearing examiners or other essential personnel, or mechanical failure of essential equipment, ie [sic] recording equipment, file storage equipment etc. The Commissioner may also grant a continuance on less than five (5) days notice to either party in the circumstances of unexpected personal emergencies of the attorney, licensee, arresting officer or key witnesses. A continuance for a personal emergency is not a continuance under the provisions of Section 14.4.6 of this rule.

*W.Va. Legislative Rules* 91 C.S.R. 5 § 14.4.7 (May 1, 1992).

tify the dismissal of the licensees' revocation proceedings. Although *W. Va. Code* 17C–5A–2(b) [1992] specifies that the "hearing shall be held within twenty (20) days," the subsection also authorizes the Commissioner to "postpone or continue any hearing on the commissioner's own motion" without setting any other limit. Because *W. Va. Code* 17C–5A–2(b) [1992] does not set a limit on the number or length of continuances, the effect of the delay on the licensees' due process rights must be considered under our general rules concerning unreasonable delay, which were stated in *State ex rel. Leonard v. Hey,* —— W.Va. ——, 269 S.E.2d 394 (1980).

In Syllabus Point 1, *Leonard,* we noted that some delays are presumptively prejudicial and that "[t]he presumption is rebuttable by the government." In *Leonard,* we found that an eleven-year delay between arrest and indictment was presumptively prejudicial. *See State v. Petrice,* 183 W.Va. 695, 700, 398 S.E.2d 521, 526 (1990) (a two and one-half-year delay between arrest and indictment was *prima facie* excessive); *Dolin v. Roberts,* 173 W.Va. 443, 317 S.E.2d 802 (1984) (a twenty-week delay between a licensee's arrest for DUI and suspension of his license was not "grossly excessive"); *Kanawha Valley Transp. Co. v. Public Service Comm'n,* 159 W.Va. 88, 219 S.E.2d 332 (1975) (a sixteen to twenty-three-month delay between the Public Service Commission's hearing and its decision did not, by itself, justify overturning the PSC's order).

In the present case, we find that a six-month delay between the revocation hearing request and the hearing is not presumptively prejudicial. However, one of the licensees, Dale R. Sinclair, has been waiting thirty-two months for a revocation hearing. Only the reschedule dates for Mr. Sinclair's hearing were provided in the record. *See supra* note 1. However, the Department argues that all of the delays, including the delays in Mr. Sinclair's case, were caused by a heavy workload and were not an intentional device to deprive the licensees of their rights. Based on the record, we find in Mr. Sinclair's case that the presumptive prejudice created by the *prima facie* excessive delay was successfully rebutted by the Department.

When a delay is not presumptively prejudicial, *Leonard* requires that the effect of the delay be determined "by weighing the reasons for the delay against the impact of the delay upon the defendant's ability to defend himself." Syllabus Point 2, *Leonard; in accord,* Syllabus Point 2, *Dolin, supra.* When the delay is not presumptively prejudicial, the defendant has the initial burden of showing how the delay prejudiced his case. In Syllabus Point 1, *State v. Richey,* 171 W.Va. 342, 298 S.E.2d 879 (1982), we said:

> The general rule is that where there is a delay between the commission of the crime and the return of the indictment or the arrest of the defendant, the burden rests initially upon the defendant to demonstrate how such delay has prejudiced his case if such delay is not *prima facie* excessive.

*See also Dolin,* 173 W.Va. at 445, 317 S.E.2d at 805.

In the present case, the expense, annoyance and aggravation the licensees suffered because they had to deal with Departmental red tape and lacked a photo operator's license are not directly related to their "ability to defend" themselves. Syllabus Point 2, *Leonard.* The licensees did not allege that the delay hampered their ability to defend themselves. Therefore, we find that the circuit court erred in requiring the dismissal of the DUI administrative procedures in the licensees' cases because the licensees failed to show how the delay prejudiced their ability to defend themselves. Instead of ordering the dismissal of the licensees' revocation hearings, the circuit court, upon finding that the hearings were unduly delayed, should have ordered the Department to conduct the hearings. In Syllabus Point 2, *Kanawha Valley Transp. Co.,* we said:

> The mere delay in the disposition or decision of a case does not vitiate the order or judgment. If a decision is unduly delayed, a proceeding in mandamus

may be instituted to compel a decision but not how to decide.

*See* Syllabus Point 6, *Lyons v. Richardson,* 189 W.Va. 157, 429 S.E.2d 44 (1993); *State ex rel. Dillon v. Egnor,* 188 W.Va. 221, 423 S.E.2d 624 (1992).

For the above stated reasons, the writ of prohibition is granted as moulded and the case is remanded for proceedings consistent with this opinion.

Writ granted as moulded.