116

The State of Ohio, Appellant, *v.* Creachbaum, Appellee.

[Cite as State v. Creachbaum (1971), 28 Ohio St. 2d 116.]

(No. 70-647—Decided December 1, 1971.)

*Mr. Roy H. Huffer, Jr.,* prosecuting attorney, and *Mr. Robert H. Huffer,* for appellant.

*Messrs. Tuttle & Britt* and *Mr. James C. Britt,* for appellee.

CORRIGAN, J. The state strives to support this appeal with six propositions of law. Before considering any of these we should set out some background facts established by the record.

Creachbaum bought a farm in Fayette County in 1965 and, in order to finance this real estate purchase, borrowed approximately $210,000 on first and second mortgages. Needing some $20,000 more to close his deal, Creachbaum went to Robert Kirkpatrick, president of the First National Bank of New Holland, Ohio. His application for these additional funds was denied.

Then, according to the record, Kirkpatrick suggested that since Creachbaum had an account with First National Bank of Sabina, Ohio, a check without funds for the necessary amount could be drawn on the Sabina account and deposited in Creachbaum's New Holland bank account, thus creating such amount of credit for him temporarily. This Creachbaum did. He then obtained an operating loan for his newly acquired farm in the amount of $83,000 from a credit association. Out of this he paid the $20,000 checking deficit, as suggested to him by Kirkpatrick.

Those transactions occurred in 1965, and subsequently Creachbaum wrote checks drawn on the Sabina Bank and deposited them in the New Holland Bank; then, he wrote new checks on the New Holland Bank and deposited them in the Sabina Bank. The funds obtained thereby were used for operating expenses. At least by August 1966, Kirkpatrick and Stanley Bernard, president of the Sabina Bank, were aware of this scheme of keeping their banks' books in balance, and countenanced it. Both bank officials seemed to rely on the fact that Creachbaum was then trying to sell his newly acquired farm and in such event each of their banking institutions would receive money therefrom to cover Creachbaum's check deficits.

In November 1966, the farm still had not been sold, and Bernard, president of the Sabina Bank, decided not to honor additional checks issued by Creachbaum and drawn on the New Holland Bank. This placed the heavy loss solely on the New Holland Bank.

All of the checks involved in these indictments were drawn on the Sabina Bank, payable to cash, marked for deposit only, and deposited in the New Holland Bank. These checks were issued on the following dates:

| | | |
|---|---|---|
| January 12, 1967 | 2 checks totaling | $153,000 |
| January 18, 1967 | 4 checks totaling | $267,000 |
| January 26, 1967 | 4 checks totaling | $271,000 |
| February 1, 1967 | 4 checks totaling | $273,000 |
| February 4, 1967 | 4 checks totaling | $274,000 |

We are not concerned in this appeal with previously is sued checks.

We will consider defendant's proposition of law No. 3 first. It asserts:

"A holding by the Court of Appeals that the record is devoid of any evidence of 'intent to defraud' in a criminal prosecution under Section 2911.111, Revised Code, where said record contains eighteen (18) original checks returned for insufficient funds, admittedly uttered and delivered by the defendant to The First National Bank of New Holland, Ohio, and (2) original false financial statements, admittedly furnished to The First National Bank of New Holland, Ohio, by the defendant, is an unwarranted invasion of the province of the jury as the trier of the facts, and therefore reversible error."

The Court of Appeals came to the conclusion that under R. C. 1115.23, upon which these indictments were founded, intent to defraud is an essential element of the crime charged, and further, that if the New Holland Bank through its president, Robert Kirkpatrick, knew that there was no money in the Sabina Bank to cover the checks in question, then the essential element of intent to defraud was lacking and the defendant could not be found guilty of the offenses charged.

The record is crystal clear on the question of Kirkpatrick's full knowledge of the absence of funds to cover these checks.[1]

---

[1]With respect to all 18 checks for which indictments were issued, Kirkpatrick testified at various places in the record that he was aware

It is also abundantly clear from the record that Kirk-patrick knew for approximately five months prior to receipt of the checks involved in these indictments "what was going on" in defendant's checking account in his bank. He testified that in November 1966 he knew he was "hooked" and that defendant could not pay off the checks unless the farm was sold.

We agree with the Court of Appeals that, under the record herein, intent to defraud was not established, and that court properly set aside the convictions. This court, in *Koenig* v. *State* (1929), 121 Ohio St. 147, although not

———

that Creachbaum had no funds to cover any of the checks. This testimony was, as follows:

"Q. What was the condition of his account at the First National Bank in Sabina in January, what was indicated to you by Bernard?

"A. He didn't have any money there.

"Q. He didn't have any money then?

"A. No.

"Q. Would that have been the time these checks were written?

"A. Yes, I am sure that it was.

"* * *

"Q. You knew on January 12, 1967 that the $83,000 check was no good?

"A. I had a feeling it wasn't, yes.

"Q. What about the $70,000 check when you took it?

"A. I had the feeling it wasn't, yes.

"* * *

"Q. But at the time you took them, at the time they were delivered to you did you know the checks were no good?

"A. Well, yes I am sure I did.

"Q. You knew they were no good?

"A. Yes.

"Q. The checks were taken by the bank with this knowledge, is that correct?

"A. Yes, I would say so—yes.

"* * *

"Q. At any rate when you accepted on January 12, exhibits 1 and 2 you knew that money was not in the Sabina Bank to cover those checks didn't you at that time?

"A. Sure.

"* * *

"Q. Starting with—all 18 of these checks you knew were no good when you got them?

"A. That is right,"

presented with the specific issue presented here, in commenting on intent to defraud, stated, at page 157:

"* * * If the accused advised the Farmers Bank prior to the issuing of checks that he did not then have the funds on deposit, or credit arranged for that would cause the check to be paid on presentation, then manifestly the bank was not deceived by any misrepresentation, and the issuing of a check under such conditions would not be a procurement of the funds of the bank with an intent to defraud, as stated in the statute. * * *"

We affirm that reasoning as applied to this case. This record unequivocally establishes that Kirkpatrick was not deceived and, therefore, there could be no intent to defraud the New Holland Bank because he was that bank's chief executive officer.

The Court of Appeals (24 Ohio App. 2d 31, 38) said in its opinion:

"Under our theory of the law of this case it was within the knowledge of Kirkpatrick that there were insufficient funds to cover the checks. This destroyed the intent to defraud on the part of the defendant. When Kirkpatrick had such knowledge prior to the issuance of the eighteen checks (the basis for the 18 indictments), there could be no conviction thereon. There was no crime. * * *"

We agree with the Court of Appeals that the determination which we reach on the third proposition of law is dispositive of this appeal and it is unnecessary for us to pass on the other propositions of law posed. Nor do we pass on the question of whether any other statutes of the state of Ohio were violated under the record we have reviewed.

Accordingly, we affirm the judgment of the Court of Appeals.

*Judgment affirmed.*

O'NEILL, C. J., SCHNEIDER, HERBERT, STERN and LEACH, JJ., concur.[2]

---

[2]JUSTICE DUNCAN sat in this case during oral argument, but did not participate in the decision.