OPINION
{¶ 1} Defendant-Appellant, James R. Fletcher, appeals a judgment of the Montgomery County Common Pleas Court finding him guilty of passing bad checks in violation of R.C. § 2913.11(B), and sentencing him to five years of community control. Fletcher asserts that the trial court's ruling was not supported by sufficient evidence *Page 2 
and that it was contrary to the manifest weight of the evidence. We determine that the conviction was supported by sufficient evidence and that the trial court did not lose its way in finding Fletcher guilty. Therefore, we affirm the judgment of conviction.
 {¶ 2} Fletcher operated a construction business that assembled and completed the construction of prefabricated homes. In the course of this business operation, Fletcher entered into a contract with Benchmark Industries, a manufacturer of prefabricated homes located in Brookville, Ohio, to complete four homes for Benchmark.
 {¶ 3} Pursuant to this contract, Fletcher was responsible for financing and for completing the construction of the homes. Fletcher discharged his obligation to complete the construction by employing various subcontractors, including a division of Benchmark, to do the work. Therefore, Fletcher had the responsibility of paying both the subcontractors and Benchmark. In order to discharge his obligations, Fletcher obtained funding from two mortgage companies as the work progressed.
 {¶ 4} By early 2006, Fletcher had fallen behind in his payments to both Benchmark and some of the subcontractors. Dan Riedel, president of Benchmark testified that Fletcher had $80,000 to $100,000 in past due bills. Because of this, Riedel requested Fletcher to issue Benchmark a check for $35,000, to pay down some of the back indebtedness to Benchmark, and to issue Riedel a check for $5,000, to repay a personal loan he had made to Fletcher. In response to this request, Fletcher immediately wrote the two checks, telling Riedel that funds were in transit to his account from a loan draw, and that the checks would be good. Benchmark deposited its check the next day and Riedel deposited his check more than a week later. Both *Page 3 
checks were dishonored for insufficient funds/account closed. Fletcher never satisfied either of the checks.
 {¶ 5} Fletcher was indicted on August 3, 2006 for one count of passing bad checks. Fletcher pled not guilty and waived a jury trial. At trial, the court found Fletcher guilty, and sentenced him to five years of community control and ordered restitution in the amount of $18,573. From this judgment, Fletcher filed this appeal asserting one assignment of error for our consideration.
"Assignment of Error
 {¶ 6} "Appellant (sic) conviction was against the sufficiency and/or manifest weight of the evidence."
 {¶ 7} In his first assignment of error, Fletcher argues that his conviction for passing bad checks was not supported by sufficient evidence, and that it was contrary to the manifest weight of the evidence. In support of this argument, Fletcher asserts that there can be no crime of passing bad checks when a payee knows that the check is not good at the time it is issued.
 {¶ 8} Because, "[t]he legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different," we will address each separately. State v. Thompkins (1997),78 Ohio St.3d 380, 1997-Ohio-52, paragraph two of the syllabus.
 {¶ 9} We first address Fletcher's claim that the evidence was insufficient to support the finding that he was guilty of this charge beyond a reasonable doubt. An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the *Page 4 
prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt. State v.Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 10} Fletcher was charged with passing bad checks. R.C. § 2913.11(B). The essential elements of this offense, that the state had to prove, were that Fletcher (1) with purpose to defraud, (2) issued a check, (3) knowing that it will be dishonored. R.C. § 2913.11(B). A person is presumed to know that a check will be dishonored if it was properly refused payment for insufficient funds upon presentment within thirty days and that it is not satisfied within ten days of notice of dishonor. R.C. § 2913.11(C).
 {¶ 11} Because Fletcher concedes that he issued two checks to Riedel, and that they were subsequently dishonored and not satisfied, we will focus only on whether the evidence established that there was "purpose to defraud."
 {¶ 12} "`Defraud' means to knowingly obtain, by deception, some benefit for oneself or another, or to knowingly cause, by deception, some detriment to another." R.C. § 2913.01(B). "`Deception' means knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission that creates, confirms, or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact." R.C. § 2913.01(A).
 {¶ 13} Fletcher cites State v. Creachbaum (1970), 24 Ohio App.2d 31,State v. Edwards (2001), 141 Ohio App.3d 388, and State v. Boyd, Montgomery App. *Page 5 
No. 19158, 2003-Ohio-2406, in support of the proposition that there can be no purpose to defraud when the payee knows that a check is not collectible at the time it is tendered.
 {¶ 14} In Creachbaum, the offense resulted from a check-kiting scheme, where numerous checks had been accepted and deposited in Creachbaum's account at New Holland Bank. The president of the bank knew for about five months what was going on, and he admitted that for two months prior to the checks in question, he knew that his bank was "hooked" on the bad checks. Creachbaum is therefore factually distinguishable because here, Riedel testified that he did not know that the funds to cover the checks were not available. Riedel testified that Fletcher represented "that there was another funding source, specifically American Express, and the funds for that had been committed and were in fact on the wire or in the mail. I'm not quite certain which, but that they were, in fact, in transit and this would provide the basis for this check to be written." And in response to cross-examination on why Riedel waited several days to deposit his check, Riedel testified that "I accepted a check knowing that the funds were going to be in transit, not that they were contemplated or working on it. They were in fact sent from one end to be received at the other end. It was not a speculative event. It was an event of time with the outcome to be certain."
 {¶ 15} In Boyd, the defendant wrote an undated check and gave it to an employee of the payee, asking that the owner of the company call him regarding the check. Before calling Boyd, the owner called the bank upon which the check was written and discovered that the account had been closed. And, the check was never negotiated. In Boyd, this court stated that the focus is on "the understanding of the payee, rather than the steps taken by the defendant to inform the payee of the status *Page 6 
of the check." And, finding that the payee understood the check to be no good, the court determined there was no crime. Boyd, supra at ¶¶ 16-17. in this case, when we focus on the understanding of Riedel, his understanding was that the funds to cover the checks were, in fact, in transit, and would be available immediately.
 {¶ 16} In considering the Eighth District's holding inEdwards, which holds that when the payee knows that a check is not collectible at the time it is tendered, there can be no crime of passing a bad check, Edwards, 141 Ohio App.3d at 395, the Twelfth District observed: "* * * we are nevertheless troubled by the result it automatically achieves. Indeed, this holding gives a drawer a blank check, so to speak, to avoid being convicted for passing bad checks by simply telling or indicating to the payee, at the time the check is issued or drawn, that it is then not good or collectible, and thereafter by never making the check good. This holding goes against `the evident purpose of [the] statute to prevent the negotiation of false checks drawn on accounts which did not exist, or were insufficient to pay the checks drawn.'" State v. Wamsley, Butler App. No. CA2002-05-109, 2003-Ohio-1872, ¶ 17, citing State v. Lowenstein (1924),109 Ohio St. 393, 402.
 {¶ 17} As pointed out in Wamsley, supra, at ¶ 18, "[i]ntent is a question of fact and not of law, Koenig v. State (1929),121 Ohio St. 147, 151, to be determined from all the facts and circumstances as shown by the evidence. State v. Johnson (1978), 56 Ohio St.2d 35, 38."
 {¶ 18} Therefore, in this case, for Fletcher's claim of insufficient evidence to be well-taken, the record, when viewed in a light most favorable to the prosecution, must fail to contain probative evidence and reasonable inferences that can be drawn *Page 7 
therefrom, which could persuade a reasonable trier of fact that Fletcher purposely deceived Riedel by a false or misleading representation beyond a reasonable doubt. State v. Jenks, supra, at syllabus 2.
 {¶ 19} Upon a review of the transcript, we determine that considering the testimony of Riedel as outlined above, there is sufficient evidence that, if believed by the trier of fact, would establish that Fletcher knowingly deceived or caused Riedel to be deceived by his false or misleading representation that the funds necessary to cover the checks were in fact in transit.
 {¶ 20} We next address Fletcher's claim that his conviction on the charge of passing bad checks was against the manifest weight of the evidence.
 {¶ 21} When an appellate court analyzes a conviction under the manifest weight standard it must review the entire record, weigh all of the evidence and all of the reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Thompkins, 78 Ohio St.3d at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. Only in exceptional cases, where the evidence "weighs heavily against the conviction," should an appellate court overturn the trial court's judgment. Id.
 {¶ 22} Fletcher in his argument attempts to cast the evidence such that it would fall within the holding in Edwards; that Riedel knew that the wire transfer had not come through and that Fletcher did not. However, in his testimony, Fletcher states "[t]hat the funds were in my account to be wired into my account by Countrywide Loans." He *Page 8 
claims that Benchmark handled all of the draw requests, and that when he wrote the checks, "Riedel told me the funds were there[,]" and that "I did not know the funds had not been wired yet. It was a shock to me to find out the next day that the funds had not been wired because I needed those funds for my own business purposes as well." Fletcher denies ever telling Riedel that American Express would be funding the checks, and he denies that there was a personal loan that he owed directly to Riedel.
 {¶ 23} A challenge to the manifest weight of the evidence attacks the credibility of the evidence presented. State v. Thompkins,78 Ohio St.3d 380, 386-387, 1997-Ohio-52. And, when reviewing the evidence, an appellate court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 24} The trial court conducted a lengthy discussion of the elements of this crime and how the evidence before it applied. The trial court found that "under any scenario of the evidence that we have, Mr. Fletcher knows or should know that there's not going to be sufficient money to pay these forty(sic) — these two checks. So the draw won't cover the amount being represented as being paid. So I find that to be deception." Based upon that finding, we determine that the trial court properly determined the credibility of the witnesses and applied the law to evidence before the court that it found credible.
 {¶ 25} After having reviewed the entire record and considered all of the conflicting evidence, we can not say that the court as the finder of fact clearly lost its way in finding Fletcher guilty. *Page 9 
 {¶ 26} Accordingly, Fletcher's assignment of error is overruled, and the conviction appealed from is affirmed.
BROGAN, J. and FAIN, J., concur.
(Hon. Sumner E. Walters, retired from the Third District Court of Appeals sitting by assignment of the Chief Justice of the Supreme Court of Ohio). *Page 1