[Cite as *State v. Askia*, 2012-Ohio-4670.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. Patricia A. Delaney, P.J. |
|  | : | Hon. W. Scott Gwin, J. |
| Plaintiff-Appellee | : | Hon. Sheila G. Farmer, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2012-CA-13 |
| SUMMER D. ASKIA | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Criminal appeal from the Delaware County Court of Common Pleas, Case No. 10CR-I-12-0595

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      October 8, 2012

APPEARANCES:

For Plaintiff-Appellee      For Defendant-Appellant

CAROL HAMILTON O'BRIEN
BRIAN WALTER      BRIAN JONES
Assistant Prosecuting Attorney      2211 U.S. Highway 23 North
Prosecutor's Office      Delaware, OH 43015
140 North Sandusky Street
Delaware, OH 43015

*Gwin, J.*

**{¶1}** On December 21, 2011, appellant Summer Askia ["Askia"] was found guilty after a bench trial of one count of passing bad checks, a felony of the fifth degree. On February 3, 2012, the trial court sentenced appellant to community control for a period not to exceed two (2) years and 30 days in the Delaware County Jail.

### Facts and Procedural History

**{¶2}** On July 10, 2010, Tim Hazzard was working at the Morse Crossing location of Discount Tires ["Easton store"]. This store is located in Franklin County Ohio. He was the store manager at that time and had worked for Discount Tires for over 16 years. On that date, Askia entered the Easton store seeking a specialty order of tires and wheels for a Cadillac. Askia presented a check for the full amount of the order, $1,514.00, written off her own bank account. The check was given to an assistant manager, who notified Hazzard that an order needed to be placed. Given the special nature of the order, Hazzard called Kemba Financial Institution, the financial institution on which Askia had drawn the check, to verify that funds were available to pay for this specialty order. Hazzard was informed that funds were unavailable at that time to cover the check. Hazzard told an assistant manager to call Askia, tell her to come get the check, and find another way to pay for the merchandise due to insufficient funds being in the account. However, Askia did not come back to the store, Hazzard did not order any of the specialty tires for her, and he lost no money on the transaction.

**{¶3}** Subsequently, on July 12, 2010, Askia and her boyfriend, Joshua Evans entered a second Discount Tire Store, this one located in Lewis Center, Delaware County, Ohio, requesting a similar specialty order of tires and wheels for their Cadillac.

Due to the uniqueness of the order, the Lewis Center store needed to place a special order for these products.

{¶4} The total for the special order was $1,618.29. The store manager, Chris O'Reilly, requested that Askia and Evans place a $100.00 deposit in order for him to place the order. O'Reilly testified that he found it odd Askia was willing to pay over $1,600 without hesitation, especially for a special order product in which rush delivery was requested. In fact, Askia had requested that the Lewis Center store have the wheels and tires available and installed that very same day. O'Reilly further testified that Askia wrote the $100 deposit check right in front of him. Askia directly handed this check to O'Reilly. Askia and Evans then left the Lewis Center Discount Tire to await word when their car would be ready.

{¶5} O'Reilly then spoke with his manager, Brian Brugh, who had spent the first part of the day at the Easton store. It took approximately two to three hours for the products Askia had ordered to be delivered to the store. In that time, Brugh recalled that a similar check had been passed a couple of days ago for a similar vehicle with a similar specialty order when he was visiting the Easton Discount Tire location. Mr. Brugh called the bank, and was notified that there were insufficient funds for the check presented by Askia. Brugh then called Hazzard at the Easton Store to confirm his suspicions. Hazzard faxed a copy of the check that had been passed two days prior to the Lewis Center Store location. The check was exactly the same; therefore, the authorities were contacted because Brugh feared the payment for the balance of the order was going to be fraudulent. Brugh then put Askia's driver's license number and the expiration date into the company's system in order to run the check through Discount Tire's check

scanner. When the specialty order of tires and wheels arrived in the Lewis Center Discount Tire a few hours later, O'Reilly called Askia and informed her that the car was ready. Askia arrived and proceeded to write and pass a second check for the remaining balance of $1,518.29. Askia also directly presented this second check to O'Reilly.

**{¶6}** Prior to Askia's return to the store, the Delaware County Sheriff's Department had been notified. Deputy Sheriff Joshua Clarke spoke with Askia regarding the insufficient funds when he arrived at the store. Askia showed Deputy Clarke a deposit slip from Kemba Financial showing that $1,700 had been put into an account on July 7, 2010. However, in response to a repeated query by Deputy Clarke regarding whether she thought there were sufficient funds, Askia stated that she and Evans would leave.

**{¶7}** The next day, Deputy Clarke requested Askia's financial records from Kemba Financial Credit Union. Upon examination of these records, Deputy Clarke discovered that Askia did not have sufficient funds on either July 10 or July 12, 2010 for the checks she had presented.

**{¶8}** At trial, Mr. Adrian Higgins, the risk manager for Kemba Financial Credit Union, testified that for the period of July 1, 2010 through July 31, 2010, Askia had an ending *negative* balance of $1,281.41 in her account. According to Higgins, Askia made a $1,700 check deposit into her account on July 7, 2010. However, on July 10, 2010, Askia's monthly statement reflects a $1,500 cash withdrawal from her savings account. This amount was not re-deposited in either her checking or savings account. On July 14, 2010, Mr. Higgins testified that Kemba Financial Credit Union never recovered the $1,281.41 from Askia.

**{¶9}** Given the unique nature of the product, the items ordered by Askia could not be sent back to the warehouse. Rather, they were left in the Lewis Center store to sell. O'Reilly and Brugh testified that in their cumulative tenure as managers of the Lewis Center Discount Tire there had not been a subsequent order for the specialty tires.

**{¶10}** On December 3, 2010, Askia was indicted by a Grand Jury in Delaware County Ohio. The indictment contained two counts of Passing Bad Checks. Count One related to the check that Askia wrote at the Easton store on July 10, 2010. Count Two related to check that Askia wrote at Discount Tires Lewis Center location on July 12, 2010.

**{¶11}** Askia did not present evidence or witnesses. Following a colloquy between the State and the Court regarding whether Askia's actions satisfied all of the elements of a purpose to defraud or merely an attempt to defraud, the Court requested both parties provide the Court with further case law on the subject. Before adjourning, the Court asked both parties to submit case law by 4:00 pm on December 20, and stated that the verdict would be announced at 3:30 pm on December 21, 2011.

**{¶12}** On December 21, 2011, the Court found Askia not guilty of passing bad checks at the Easton Discount Tire Location, but guilty of passing bad checks at the Lewis Center Discount Tire Location.

### *Assignments of Error*

**{¶13}** Askia raises two assignments of error,

**{¶14}** "I. THE STATE OF OHIO DID NOT PRESENT SUFFICIENT EVIDENCE AND THE COURT'S CONVICTION OF MS. ASKIA IS AGAINST THE MANIFEST

WEIGHT OF THE EVIDENCE WHEN THERE WERE NO GOODS TENDERED, NO SERVICES RENDERED, NO DEBT SATISFIED, AND NO PURPOSE TO DEFRAUD BECAUSE SHE RECEIVED NO BENEFIT OR ADVANTAGE AND THE BUSINESS DID NOT INCUR SOME DETRIMENT.

**{¶15}** "II. THE TRIAL COURT ERRED AND DENIED APPELLANT A FAIR TRIAL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WHEN IT DENIED COUNSEL THE OPPORTUNITY TO MAKE A CLOSING ARGUMENT PRIOR TO THE JUDGMENT OF THE TRIAL COURT."

I.

**{¶16}** Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which requires a court of appeals to determine whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id.; see also *McDaniel v. Brown*, _U.S._, 130 S.Ct. 665, 673, 175 L.Ed.2d 582(2010) (reaffirming this standard); *State v. Fry*, 125 Ohio St.3d 163, 926 N.E.2d 1239, 2010–Ohio–1017, ¶ 146; *State v. Clay*, 187 Ohio App.3d 633, 933 N.E.2d 296, 2010–Ohio–2720, ¶ 68.

**{¶17}** Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith,* 80 Ohio St.3d 89, 684 N.E.2d 668, 1997-Ohio–355. Weight of the evidence concerns "the

inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis sic.) Id. at 387, 678 N.E.2d 541, quoting Black's Law Dictionary (6th Ed. 1990) at 1594.

{¶18} When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the fact finder's resolution of the conflicting testimony. Id. at 387, 678 N.E.2d 541, quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). However, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, supra, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "'the exceptional case in which the evidence weighs heavily against the conviction.'" Id.

> "[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

**{¶19}** In the case at bar, Askia was convicted of passing bad checks. The essential elements of passing a bad check under R.C. 2913.11(B) are that Askia (1) with purpose to defraud, (2) issued a check, (3) knowing that it will be dishonored.

**{¶20}** A person acts "purposefully" when "it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." R.C. 2901.22(A).

**{¶21}** R.C. 2913.01(B) defines "defraud" as "to knowingly obtain, by deception, some benefit for oneself or another, or to knowingly cause, by deception, some detriment to another." "Deception" is defined as "knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission that creates, confirms, or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact." R.C. 2913.01(A).

**{¶22}** R.C. 2901.22(B) provides that "a person acts knowingly, regardless of his purpose when he is aware that his conduct will probably cause a certain result or will be

of a certain nature. A person has knowledge of the circumstances when he is aware that such circumstances probably exist." "Whether a person acts knowingly can only be determined, absent a defendant's admission, from all the surrounding facts and circumstances, including the doing of the act itself." *State v. Huff,* 145 Ohio App.3d 555, 563, 763 N.E.2d 695(2001). (Footnote omitted.) Thus, "[t]he test for whether a defendant acted knowingly is a subjective one, but it is decided on objective criteria." *State v. McDaniel,* 2nd Dist. No.6221, 1998 WL 214604, (citing *State v. Elliott,* 104 Ohio App.3d 812, 663 N.E.2d 412(1995)).

**{¶23}** A person is presumed to know that a check will be dishonored if the check was properly refused payment for insufficient funds upon presentment within thirty days and that it is not satisfied within ten days of notice of the dishonor. R.C. 2913.11(C).

**{¶24}** R.C. 2913.11(C) establishes a rebuttable presumption to assist the state in meeting its burden of proof with regard to the element of knowledge. While presentment and notice of dishonor are required in order for the state to take advantage of the statutory presumption, they are not required to prove the element of knowledge that the checks would be dishonored for purposes of the offense of passing bad checks set out in R.C. 2913.11(A). *State v. Bergsmark*, 6th Dist. No. L-03-1137, 2004-Ohio-5753, ¶15; *State v. Hines*, 12th Dist. No. CA94-09-182, 1995 WL 389570(July 3, 1995). Where the state chooses not to rely upon the statutory presumption or the presumption is inapplicable, the knowledge element may be proven by means other than evidence of presentment and dishonor. Id.

**{¶25}** In the case at bar, Askia contends that there is no evidence that she obtained any benefit when she wrote the checks to Discount Tire because she never

received the tires and the employees did not intend to perform any services for Askia because they knew the checks were worthless.

{¶26} At trial evidence was presented that on July 7, 2010, Askia had deposited a third-party check into her account for $1,700.00. On July 10, 2010, Askia withdrew $1,500.00 from her account. She proceeded on that date to the Easton store where she did not offer to pay cash for the merchandise; rather she gave the store a check. When contacted by an employee of the Easton store, Askia was informed that she did not have enough money in her checking account to pay for the merchandise she had requested. The employee informed Askia she would need to make alternative arrangements to pay for the items. She did not returned to the store with the $1,500.00 in cash that she had withdrawn from her account earlier. Instead, two days later on July 12, 2010, Askia went to a location in a separate county and requested the same merchandise. She wrote check number 128 for $100.00 as a deposit for her order. She further insisted the wheels and tires be installed that day, even paying extra for rush delivery. She then wrote check number 129 for $1,518.29 to pay the balance. Upon being informed that her account did not have sufficient funds to pay the checks, Askia did not offer to give the store the $1,500.00 in cash that she had withdrawn from her account on July 10, 2010.

{¶27} On July 14, 2010, the bank informed Askia that the check she had deposited into her account on July 7, 2010 for $1,700.00 was dishonored, having been written on a closed account. At no time did Askia deposit the $1,500.00 she had withdrawn from her account on July 10, 2010 back into her account. At the end of July, Askia had negative balances in both her checking and savings accounts.

**{¶28}** Intent to defraud exists where a defendant issues a worthless check to a creditor or vendor to fraudulently induce the creditor or vendor to part with property in reliance upon the check's value. In addition, where a defendant has no reasonable ground to believe the funds in his bank account would be sufficient to cover checks issued, an inference of intent to defraud arises. *State v. Bergsmark, supra* 2004-Ohio-5743, ¶14.

**{¶29}** Askia's accounts had a balance below what she needed at all relevant times. In the case of *State v. Creachbaum*, 28 Ohio St. 2d 116, 276 N.E. 2d 240 (1971), the court determined that "intent to defraud" was not present where a bank president knowingly accepted checks on a bank where no funds existed to the credit of the drawer and there was a scheme to move checks for deposit between banks to accommodate the depositor-drawer of these checks. The facts of the case made knowledge of the scheme a failure to establish "intent to defraud." In the case at bar, what in fact took place was not a mere credit transaction as it was in *Creachbaum*.

**{¶30}** The evidence is sufficient to prove beyond a reasonable doubt that Askia acted with purpose to defraud. On the day, she first sought the merchandise from the Easton store Askia's withdrew the bulk of the money she purportedly deposited. Upon being informed the check was going to be dishonored Askia abandoned the transaction at that store. Two days later with no intervening change in her financial situation, Askia traveled to a different jurisdiction and attempted the same transaction in the same manner. This evidence is sufficient for a rational trier of fact to have found a purpose to defraud.

**{¶31}** Askia's first assignment of error is overruled.

II.

**{¶32}** Askia argues in her second assignment of error that the trial court denied her a fair trial when it denied her trial counsel the opportunity to make a closing argument.

**{¶33}** The United States Supreme Court has held that a statute permitting a trial judge to deny a criminal defendant closing argument denies "the basic right of the accused to make his defense" in violation of the Sixth Amendment of the United States Constitution. *Herring v. New York*, 422 U.S. 853, 859, 95 S.Ct. 2550, 45 L.Ed.2d 593(1975). Thus, a trial court is not permitted to *totally* deny a criminal defendant the opportunity to present a closing argument whether his trial is to a jury or to the bench. *Id.; State v. McCausland,* 124 Ohio St.3d 8, 2009-Ohio-5933, 918 N.E. 2d 507, ¶ 6. However, the right to present a closing argument may be waived. *Id.* at ¶ 7, 918 N.E. 2d 507, citing *Yopps v. State* (1962), 228 Md. 204, 207, 178 A.2d 879. Recently, the Ohio Supreme Court held that such a waiver need not be express, intentional, and voluntary. *McCausland,* ¶¶ 8-10. Rather, "[a] criminal defendant waives the Sixth Amendment right to present a closing argument when he or she neither requests a closing argument nor objects to its omission." *Id.* at syllabus. *State v. Barnes,* 3rd Dist. No. 2-09-23, 2010-Ohio-987, ¶26.

**{¶34}** After a discussion of Askia's Crim.R. 29 motion for acquittal, the following exchange occurred,

[The Court]: Anything else, Mr. Hogan, you want to assert?

[Mr. Hogan]: I do not, your Honor. I have closing argument.

[The Court]: No. No. You may put on evidence. You Know?

[Mr. Hogan]:  Your honor.

[The Court]:  The only thing before the Court right now is the Rule 29 Motion, and that's the Court's only concern right now. So let's go and do— we stand in recess for a few moments.

T. Bench Trial at 77-78. After the recess, the court continued,

[The Court]:  I'm going to overrule your Rule 29 motion at this point in time. You may proceed.

[Mr. Hogan]:  Your Honor, defense does not have any further witnesses to call at this time.

Id. at 78. The trial court then indicated it would take the matter under advisement and research the legal issues. Thereupon the state requested, and was granted, the opportunity to orally state for the record the state's position with respect to the Rule 29 motion. Id. at 79. At the conclusion, the trial court gave Askia's attorney the opportunity to put his client's position on the record, to which counsel replied, "I don't have anything at this time, your Honor." Id. at 80. At the conclusion of the hearing the Court continued,

Let's before we leave, let's get a date for the verdict. You do your research and fax it to the court no later than four o'clock on Tuesday. We'll schedule the matter for further hearing at 3:15 on the 20th, I want to do more research. Make it 3:30.

The verdict will be announced on the 21st at 3:30, and the case law by [sic.] me four o'clock on the 20th, the previous day.

Id. at 82-83.

{¶35} Askia's counsel did not request an opportunity to make a closing statement either in writing or orally prior to the announcement of the verdict on December 21, 2011.

{¶36} Clearly, the trial court afforded Askia the opportunity to make an argument with respect to the insufficiency or weight of the evidence prior to ruling on her Crim.R. 29 motion. Askia waived that argument. Further, in this case, Askia had the opportunity to present a closing argument but waived her right to closing argument when she failed to renew her request and failed to object to its omission. There is no evidence that the trial court denied counsel on either side the opportunity to present a closing argument. We find that no plain error exists because there was no indication that the outcome of this trial would have been different had a closing argument been made. *McCausland,* 124 Ohio St.3d 8, ¶ 15.

{¶37} Askia's second assignment of error is overruled.

**{¶38}**  The judgment of the Delaware County Court of Common Pleas is affirmed.

By Gwin, J.,

Delaney, P.J., and

Farmer, J., concur

_____

HON. W. SCOTT GWIN

_____

HON. PATRICIA A. DELANEY

_____

HON. SHEILA G. FARMER

WSG: clw 0904

[Cite as *State v. Askia*, 2012-Ohio-4670.]

IN THE COURT OF APPEALS FOR DELAWARE COUNTY, OHIO

FIFTH APPELLATE DISTRICT

STATE OF OHIO                          :
                                       :
              Plaintiff-Appellee       :
                                       :
                                       :
-vs-                                   :        JUDGMENT ENTRY
                                       :
SUMMER D. ASKIA                        :
                                       :
                                       :
              Defendant-Appellant      :        CASE NO. 2012-CA-13


     For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Delaware County Court of Common Pleas is affirmed. Costs to appellant.


 

_____
HON. W. SCOTT GWIN


_____
HON. PATRICIA A. DELANEY


_____
HON. SHEILA G. FARMER