[Cite as *State v. Neiss-Parsons*, 2021-Ohio-897.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## GEAUGA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2020-G-0253** |
| MARCIA L. NEISS-PARSONS, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Geauga County Court of Common Pleas, Case No. 2019 C 000030.

Judgment: Affirmed.

*James R. Flaiz*, Geauga County Prosecutor, and *Kelly M. Humphrey*, Assistant Prosecutor, 231 Main Street, Third Floor, Chardon, Ohio 44024 (For Plaintiff-Appellee).

*Kenneth Staiduhar*, 1231 Superior Avenue, Suite 200, Cleveland, Ohio 44114 (For Defendant-Appellant).

THOMAS R. WRIGHT, J.

{¶1} Appellant, Marcia L. Neiss-Parsons, appeals her convictions for two counts of passing bad checks in violation of R.C. 2913.11(B). We affirm.

{¶2} Appellant raises four assignments of error, and we address her first two collectively, which assert:

{¶3} "[1.] The trial court committed prejudicial error when it denied Defendant-Appellant's, Marcia Neiss-Parsons, motion for acquittal under Crim.R. 29(A) because the

State failed to prove a crucial element of the crime—purpose to defraud. As to Count One, the alleged victim testified that he knew that he was not supposed to cash the check due to insufficient funds in the account, therefore transforming the receipt of the check into a mere credit transaction, thereby completely barring a finding of purpose to defraud. As to Count Two, the State relied solely upon trial testimony from a perjured witness.

{¶4} "[2.] A verdict of guilty is against the manifest weight of the evidence because the essential element of 'purpose to defraud' was shown to be non-existent as to Count One by the State's own evidence, and therefore could not have been proven beyond a reasonable doubt; and fundamentally flawed perjured-witness testimony failed to establish purpose to defraud as to Count Two."

{¶5} Appellant argues that the state did not establish that she had the purpose to defraud, an essential element of passing bad checks, because the victim, Mazzurco, was aware that the checks could not be cashed. She also argues that her convictions hinge on the testimony of a perjured witness and that the jury's decision is against the manifest weight of the evidence.

{¶6} "A motion for acquittal may be granted only when, construing the evidence most strongly in favor of the state, the evidence is insufficient to sustain a conviction." (Citation omitted.) *State v. Grate*, ___ Ohio St.3d ___, 2020-Ohio-5584, ___ N.E.3d ___, ¶ 146; *accord* Crim.R. 29(A). "Whether the evidence is legally sufficient to sustain a verdict is a question of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997); *accord State v. Davis*, 11th Dist. Lake No. 2019-L-170, 2021-Ohio-237, ¶ 187. "In essence, sufficiency is a test of adequacy." *Id.* "In a sufficiency-of-the-evidence inquiry, the question is whether the evidence presented, when viewed in a light most

2

favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt." *State v. Dent*, ___ Ohio St.3d ___, 2020-Ohio-6670, ___ N.E.3d ___, ¶ 15, citing *State v. Jenks*, 61 Ohio St.3d 259, 259-60, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶7} Unlike a challenge to the sufficiency of the evidence, a challenge to the manifest weight of the evidence "concerns 'the inclination of the *greater amount of credible evidence* * * * to support one side of the issue rather than the other.'" (Emphasis sic.) *Thompkins* at 387, quoting *Black's Law Dictionary* 1594 (6th Ed.1990). In reviewing the manifest weight of the evidence, we must consider the entire record, including the credibility of the witnesses, the weight of the evidence, and any reasonable inferences, and determine whether the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983); *accord State v. Masters*, 11th Dist. Lake No. 2019-L-037, 2020-Ohio-864, ¶ 18-19.

{¶8} Upon concluding that the trial court's decision is not against the manifest weight of the evidence, an appeals court need not do a separate analysis as to sufficiency, because a conclusion that a verdict is not against the manifest weight necessarily means it is supported by sufficient evidence. *Masters* at ¶ 17.

{¶9} R.C. 2913.11(B) provides, "No person, with purpose to defraud, shall issue or transfer or cause to be issued or transferred a check or other negotiable instrument, knowing that it will be dishonored or knowing that a person has ordered or will order stop payment on the check or other negotiable instrument." "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense

3

is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A). "'Defraud' means to knowingly obtain, by deception, some benefit for oneself or another, or to knowingly cause, by deception, some detriment to another." R.C. 2913.01(B). "'Deception' means knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission that creates, confirms, or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact." R.C. 2913.01(A).

{¶10} This case involves the issuance of two checks that were returned for insufficient funds and issued from a closed account. In September 2018, appellant viewed a rental property. She was informed that a deposit was required to hold the property until she could sign the lease. Appellant wrote Mazzurco a check for $300 to hold the property, and he deposited it on September 22, 2018. The check was subsequently returned for having insufficient funds and being issued from a closed account.

{¶11} Appellant wrote the second check when she signed the lease with Mazzurco on October 3, 2018. At that time, she was required to pay $2,400 for her first and last months' rent, security deposit, and a pet deposit. Appellant asked Mazzurco not to cash the check right away. They communicated back and forth several times before appellant told him the check could be deposited on October 11,

4

2018. The next day, Mazzurco deposited the check. This check was also returned for insufficient funds and being issued from a closed account.

{¶12} Appellant testified that she informed Mazzurco's wife on September 16, 2018, that the only check she had was for a closed account, and that Mrs. Mazzurco informed her it was okay to use that to hold the apartment. Appellant further testified that Mazzurco knew he could not immediately cash the $2,400 dated October 3, 2018.

{¶13} Appellant cites three cases in support that address the payee's knowledge of insufficient funds as precluding a finding that the payor had the requisite purpose to defraud. In *State v. Creachbaum*, 28 Ohio St.2d 116, 119, 276 N.E.2d 240 (1971), the defendant was part of a check kiting scheme. Creachbaum would write checks on an account with insufficient funds and deposit them into another account to obtain capital. The Supreme Court of Ohio held that no purpose to defraud could be proven because the president of the bank was clearly aware of Creachbaum's conduct. *Id.* at syllabus.

{¶14} In *State v. Edwards*, 141 Ohio App.3d 388, 395, 751 N.E.2d 510 (8th Dist.2001), the court held "when the payee knows that a check is not collectible at the time it is tendered, there can be no crime of passing a bad check." (Citations omitted.) And in *State v. Boyd*, 2d Dist. Montgomery No. 19518, 2003-Ohio-2406, ¶ 16, the court found there was no evidence of purpose to defraud when the defendant took steps to inform the payee that the check would not be honored.

{¶15} The focus of these three cases is the payee's undisputed knowledge that the defendant was writing bad checks, and each court determined that the

5

purpose to defraud was unproven because there was no deceit. The instant case, however, is distinguishable.

{¶16} Although appellant contends that Mazzurco, or his wife, was aware that the initial $300 check was written on a closed account, Mazzurco's testimony on this issue says otherwise. He testified that he was unaware the check was bad, and if he had been aware, he would not have accepted it. He testified:

> Q. How much did she write that check out for?
>
> A. She wrote that check out for $300.
>
> Q. Did she make any statements to you about cashing that check or not cashing that check at that time?
>
> A. Nope.
>
> Q. Okay. Did she ever tell you not to cash the check for any reason?
>
> A. Nope.
>
> Q. Was it your impression that that check was good to cash at that time?
>
> A. Yes.
>
> * * *
>
> Q. Did the Defendant ever tell you that these checks that she wrote were written on closed accounts before she gave them to you?
>
> A. Nope.
>
> Q. Before going to the bank to deposit either one of these checks, had you known they were written on closed accounts and would be returned?
>
> A. Nope.
>
> Q. And why not?

6

A. Because I wouldn't be getting my money, and I would be getting charged for check fees if I went and tried to deposit them and cash them.

{¶17} As for the $2,400 check issued October 3, 2018, it is undisputed that appellant initially told Mazzurco that she did not have the money in the account and that he would have to wait before cashing it. But thereafter, she told him that he could cash it:

Q. Now, did the Defendant say anything to you about the $2,400 check she gave you?

A. She said wait before cashing it so that she would have money in the bank.

Q. Okay. Did she indicate she did not have money in the bank at that time?

A. Yes.

Q. Okay. Did she say when she would have money to pay you?

A. She said approximately about a week.

{¶18} Appellant argues that because Mazzurco was aware that the check was not immediately cashable, under *Creachbaum*, *Edwards*, and *Boyd,* there is nothing evidencing her purpose to defraud when she wrote this check. However, the requisite purpose to defraud is not forever negated by the recipient's knowledge that the funds are not immediately available. Instead, appellant told Mazzurco that he could cash the check on October 11, 2018, and when he went to the bank the next day, the funds were not available. Thus, unlike the cited cases, appellant had the requisite intent regardless of her intent at the time she issued the check.

{¶19} The state established that the checks issued by appellant were written from an account that was closed in 2007. Mazzurco's testimony establishes that he believed

7

money was going to be deposited into appellant's account sufficient to pay the checks she had written him. Appellant's request for him to wait to cash the check does not defeat the state's proof of her purpose to defraud. After the week passed, and he had permission to cash it, appellant's intent was evident. *See State v. Fltecher*, 2d Dist. Montgomery No. 22235, 2008-Ohio-6546, ¶ 16, citing *State v. Lowenstein*, 109 Ohio St. 393, 402, 142 N.E. 897 (1924) (the purpose of the statute is to prevent the negotiation of checks drawn on accounts that do not exist or are insufficient).

{¶20} Appellant further argues that Mazzurco's testimony is not credible because he perjured himself at trial and thus any decision that relies on his testimony is against the manifest weight of the evidence. Contrary to her assertion, however, nothing evidences that he perjured himself, and as such, this argument lacks merit.

{¶21} Appellant claims that on cross-examination Mazzurco gave conflicting testimony about whether he met appellant at the rental property on September 16, 2018. Appellant claims that she actually met Mazzurco's wife, not just him. Regardless, Mazzurco did not testify that he was the first or only person to meet appellant, and he did not testify that his wife did not meet with appellant.

{¶22} While appellant contends that Mazzurco was aware that the $300 check could not be cashed, Mazzurco testified otherwise, and "the jury was free to believe or disbelieve the testimony of any witness as to any issue, and the testimony of any one witness as to any material fact, believed by the trier of fact, is sufficient to prove any such fact." *State v. Jones*, 2d Dist. Clark No. 2005 CA 122, 2007-Ohio-2425, ¶ 24.

{¶23} Therefore, the jury's decision was not against the manifest weight of the evidence when it found Mazzurco's testimony more credible than appellant's. Given

the evidence, the jury did not clearly lose its way in finding appellant guilty. Therefore, appellant's conviction is not against the manifest weight of the evidence and is necessarily supported by sufficient evidence. Accordingly, appellant's first and second assignments of error lack merit.

{¶24} Appellant's third assigned error asserts:

{¶25} "[3.] The trial court committed prejudicial error when it allowed the State to introduce evidence of Ms. Parsons' prior convictions because they were similar to the current charges against her, all prior convictions were more than ten years old, and exposing the jury to those prior convictions resulted in extreme prejudice to Ms. Parsons."

{¶26} Appellant argues that the trial court erred when it permitted the introduction of her previous convictions, which were more than ten years old, in violation of Evid.R. 609(B). The state sought introduction of appellant's previous convictions for passing bad checks, forgery, and theft.

{¶27} A conviction that is more than ten years old is inadmissible unless the trial court determines that the probative value substantially outweighs the prejudicial effect. Evid.R. 609(B).

{¶28} The trial court has broad discretion to determine the admissibility of prior convictions for impeachment purposes when applying Evid.R. 609(B) in conjunction with Evid.R. 403. *State v. Wright,* 48 Ohio St.3d 5, 7, 548 N.E.2d 923 (1990). In exercising that discretion, the court may consider: "(1) the nature of the crime, (2) recency of the prior conviction, (3) similarity between the crime for which there was a prior conviction and the crime charged, (4) importance of the defendant's testimony, and (5) centrality of

9

the credibility issue." (Citations omitted.) *State v. Goney,* 87 Ohio App.3d 497, 501, 622 N.E.2d 688 (2d Dist.1993).

{¶29} Here, the trial court made particularized findings that the probative value of appellant's prior convictions substantially outweighed their prejudicial effect. The trial court found specific facts and circumstances, including the credibility of appellant's testimony and the similarity of the prior convictions and the alleged crimes charged, as reasons the probative value of the convictions substantially outweighed their prejudicial effect.

{¶30} Appellant acknowledged that she and Mazzurco were the key witnesses in the case when arguing his testimony should be disregarded due to his alleged perjury. Therefore, appellant's credibility was directly in issue, and crimes of deceit are directly relevant when addressing a witness' credibility, honesty, and integrity. *State v. Wright*, 7th Dist. Columbiana No. 96-CO-34, 1998 WL 355862, *2 (June 24, 1998), citing *Goney* at 503 and *Gorden v. United States,* 383 F.2d. 936 (D.C.Cir.1967).

{¶31} The trial court found that appellant's prior acts were important and central to the case because she was charged with crimes of dishonesty or deceit. Further, the state properly notified appellant of its intent to use convictions that were more than ten years old as required by Crim.R. 609(B).

{¶32} Appellant's third assignment of error is without merit.

{¶33} Appellant's fourth assigned error asserts:

{¶34} "[4.] Trial counsel was ineffective and caused prejudicial harm to Ms. Parsons because trial counsel failed to object to jury instructions that did not tell the jury to disregard perjured testimony."

10

{¶35} Appellant argues that trial counsel rendered ineffective assistance by failing to object to the jury instructions, which did not instruct the jury to disregard Mazzurco's testimony. She first claims the trial court should have given a perjury jury instruction regarding Mazzurco's testimony. Second, she contends it was ineffective for trial counsel not to object to the instructions given.

{¶36} However, appellant has failed to demonstrate what the proper jury instruction should have been. Further, we have already explained that she has not established that Mazzurco perjured himself.

{¶37} Appellant has not demonstrated that trial counsel's performance fell below an objective standard of reasonableness, nor has she shown that but for counsel's deficient performance, the outcome would have been different. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Therefore, her fourth assignment of error lacks merit.

{¶38} The trial court's decision is affirmed.


MARY JANE TRAPP, P.J.,

MATT LYNCH, J.,

concur.

11